# UNITED STATES DISTRICT COURT

for the

Middle District of Louisiana

| | | |
|---|---|---|
| CHERYL SIBLEY McKINNEY, | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| VERSUS | * | CASE NO. 3:25-cv-00080-SDD-RLB |
| | * | |
| RONALD L. SHARP, SR., | * | |
| BRENT BALLARD, | * | |
| LYNDON HENDLEY, | * | Jury Trial Requested |
| STEVEN FONTENOT, | * | |
| BRIAN BINKLEY, | * | |
| ERNEST DRAKE, III, | * | |
| CATHEY POSEY, JOHN HENRY, | * | |
| BLAKE ERDEY, | * | |
| KYLE BRENT MILTON, | * | |
| AND THE TOWN OF KILLIAN, | * | |
| | * | |
| Defendants | * | |

## FIRST AMENDED COMPLAINT

### PRELIMINARY STATEMENT

This is an action brought under 42 U.S.C. §1983 and the laws of the State of Louisiana to hold the Town of Killian, via its policymaker and other public officials, accountable for their unreasonable, unlawful, and malicious violations of the Plaintiff's rights.

The Plaintiff, Cheryl Sibley McKinney ("Plaintiff" or "Cheryl"), is a resident of the Town of Killian. She is involved in her community and attempts to stay informed about her local government by attending public meetings, asking questions when necessary, and voicing her opinions on issues of concern to her and the general public. On October 14, 2020, Cheryl

1

purchased property located within the corporate limits of the Town of Killian ("Killian" or "Town") and began the process of building a home there, where she currently resides with her husband and children. Initially, the Plaintiff's interactions with Killian's public officials and employees were pleasant. Unfortunately, this changed not long after Ronald L. Sharp, Sr. ("Mayor Sharp") took office as the mayor of Killian.

Mayor Sharp is Killian's final policymaking authority. Under his administration, the Town and its public officials have ignored Louisiana's laws and trampled upon Cheryl's rights, as guaranteed by the State and U.S. Constitutions. Louisiana Constitution Article 12, Section 3 guarantees citizens the right to participate in their government. This guarantee is implemented through Louisiana's Public Records Law and Open Meetings Law, both of which the aforementioned public officials have repeatedly ignored. Article 1, Section 7 of the Louisiana Constitution and the First Amendment to the United States Constitution guarantee citizens' rights to freedom of speech and expression. The First Amendment also guarantees citizens' rights to petition the government. Government actors' retaliating against a citizen for exercising constitutionally-guaranteed rights is unconscionable under the Louisiana Constitution and the United States Constitution.

In this case, Mayor Sharp, Ballard, and Drake repeatedly contacted Cheryl's then-employer, attempting to get her fired to retaliate for her speaking at public meetings and filing a petition in state court to enforce rights guaranteed by Louisiana laws. Additionally, Mayor Sharp, Ballard, Hendley, and Fontenot scheduled a meeting with Cheryl's supervisor in an attempt to get her to stop exercising her right to express herself. This, as well as other constitutional and statutory violations form the basis of this suit.

## JURISDICTION

2

1.  This Complaint seeks remedies pursuant to 42 U.S.C. §1983, alleging violations of the First and Fourteenth Amendments to the Constitution of the United States of America, as well as the laws of the State of Louisiana.

2.  Jurisdiction over the federal claims is conferred upon this Honorable Court pursuant to 28 U.S.C. § 1331. Several claims are brought under Louisiana state law; however, pursuant to 28 US.C. § 1367 and 28 U.S.C. § 1441(c), this Court has supplemental jurisdiction over the state law claims, as well.

## PARTIES

3.  Cheryl Sibley McKinney is a person of the full age of majority domiciled in the Town of Killian, Parish of Livingston, State of Louisiana.

4.  Ronald L. Sharp, Sr. is a person of the full age of majority domiciled in the Parish of Livingston, State of Louisiana, and who is being sued both personally and in his capacity as the current mayor of the Town of Killian;

5.  Brent Ballard is a person of the full age of majority domiciled in the Parish of Livingston, State of Louisiana, and who is being sued both personally and in his capacity as a former alderman for the Town of Killian;

6.  Lyndon Hendley is a person of the full age of majority domiciled in the Parish of Livingston, State of Louisiana, and who is being sued both personally and in his capacity as an alderman for the Town of Killian;

7.  Steven Fontenot is a person of the full age of majority domiciled in the Parish of Livingston, State of Louisiana, and who is being sued both personally and in his capacity as the chief of police of the Town of Killian;

8.  Brian Binkley is a person of the full age of majority domiciled in the Parish of Livingston, State of Louisiana, and who is being sued both personally and in his capacity as an alderman for the Town of Killian;

9.  Ernest Drake, III is a person of the full age of majority believed to be domiciled in the Parish of Tangipahoa, and who is being sued both personally and in his capacity as the alleged municipal attorney and alleged magistrate for the Town of Killian;

10.  Cathy Posey is a person of the full age of majority domiciled in the Parish of Livingston, the State of Louisiana, and who is being sued both personally and in her capacity as the town clerk for the Town of Killian;

11.  John Henry is a person of the full age of majority domiciled in the Parish of Livingston, State of Louisiana, and who is being sued both personally and in his capacity as an alderman for the Town of Killian;

12.  Blake Erdey is a person of the full age of majority believed to be domiciled in the Parish of Livingston, State of Louisiana, and who is being sued both personally and in his capacity as public employee of, and a custodian of certain public records belonging to, the Town of Killian;

13.  Kyle Brent Milton is a person of the full age of majority believed to be domiciled in the Parish of Livingston, State of Louisiana, and who is being sued both personally and in his capacity as public employee of, and a custodian of certain public records belonging to, the Town of Killian; and

14.  The Town of Killian is a duly incorporated municipality and political subdivision of the State of Louisiana.

## FACTS

### Cooperative Endeavor Agreements

15.  On October 14, 2020, the Plaintiff purchased property located within Killian's corporate limits and began the process of building a home there.  She currently resides in that home with her husband and children.  Before moving to Killian, the Plaintiff began attending public meetings in the Town of Killian.  Initially, attendance at meetings was necessary because, absent obtaining approval of a subdivision plat from the Town's board of aldermen, the Plaintiff could not build her house.  After obtaining Killian's approval, the Plaintiff was required to obtain a building permit from the Livingston Parish Permit Department.  Then, throughout the building process, the Plaintiff was required to have building code inspectors from the Livingston Parish Building Department inspect and approve various phases of the build.  Any inspection that was necessary during normal business hours on a Friday required the Plaintiff to pay an extra three hundred dollar fee.

16.  While in the initial phases of building the home, the Plaintiff's contractors informed her that there would be problems getting materials and equipment, including large concrete trucks, to the site because a neighbor's camper was blocking the only road that provides public access to the Plaintiff's property.  After attempts to get the neighbor to move the camper failed, the Plaintiff contacted Livingston Parish Code Enforcement, and an investigator was assigned to handle the complaint.  More than a month later, on the very day that the investigator was scheduled to issue the neighbor a summons, the assigned investigator's supervisor, Sam Digirolamo, ordered him to stand down.  The supervisor explained that Mayor Sharp contacted Livingston Parish Code Enforcement and commanded those officials to refrain from enforcing code violations within Killian's corporate limits and, specifically, on the road adjacent to Cheryl's future home.  In response to a public records request, the Town stated that it has a CEA with Livingston Parish,

which allow the parish to issue building permits. However, the Town did not provide a copy, as requested.

17. Although Louisiana law requires municipalities to enforce the building code, Mayor Sharp's actions left Killian with no code enforcement. Therefore, the Plaintiff brought her concerns to some of Killian's other elected officials. Initially, a majority of the aldermen agreed that Killian needed to have code enforcement officers, as required by Louisiana law. Killian's board of aldermen voted three separate times at three separate public meetings to enter into a cooperative endeavor agreement ("CEA") with Livingston Parish so the parish's code investigators could enforce the laws within Killian's corporate limits. Mayor Sharp snubbed these elected officials and refused to sign the CEA, while regularly telling Cheryl that he intended to sign it. Not one time did Sharp exercise his policymaking authority by vetoing the CEA. Rather, he just refused to acknowledge its existence, as did Posey when she failed to certify the CEA and send it to Mayor Sharp in accordance with the applicable law. When asked during public meetings who would be performing code enforcement for the Town, Mayor Sharp said the Killian police would. In actuality, Killian police would not. The Killian police officers could not even ascertain where in the law the code exists. In fact, the Killian police chief has admitted that he does not know how to enforce the code. Further, Louisiana law requires those individuals tasked with enforcing code violations to be trained.

18. The same neighbors who parked the camper in the road also had large piles of garbage laying around outside their house. There were Freon tanks laying around, rusting. There were piles of used diapers. There was junk everywhere and it was being strewn onto everyone else's property by the wind and dogs. One of the Freon tanks was thrown onto the Plaintiff's property, as were other containers that were labeled as hazardous materials. Then, the same neighbor's sewer system

began leaking, causing sewage to run all across the Plaintiff's property.  Killian police were called and the appointed chief of police, Fontenot, came to talk to the Plaintiff.  He promised he would write the neighbor a summons.  For more than a year after one specific incident, Fontenot continued to tell Cheryl that he was going to enforce the laws.  However, he did not and his actions resulted in Cheryl losing her right to petition the court to redress the damage the neighbors caused.

19.  To date, Mayor Sharp has failed to secure any form of code enforcement for the Town.

20.  Upon information and belief, in April of 2024, Mayor Sharp, Ballard, and other elected officials engaged in a conspiracy to create an "emergency" with the Town's municipal water system.  In doing so, Mayor Sharp, unilaterally and without approval from either the board of aldermen or the State Bond Commission, incurred hundreds of thousands of dollars of debt for the Town.  He did this by signing a CEA with Livingston Parish.  The CEA included a requirement that Killian repay the parish for "repairs" to the water system.  The Louisiana Department of Health found that no repairs were necessary and issued an order requiring the Town to restore the system to the condition it was in prior to Mayor Sharp's contrived emergency.  Also during this time, Mayor Sharp also signed a contract with a consultant without any advertisement and without any input from the board of aldermen.  Prior to the water debacle, the contractor with whom Mayor Sharp contracted had given the Town an estimate of $3,500.00 per week to flush water lines.  In the contract Mayor Sharp signed, he agreed to pay the contractor $7,500.00 per day for the same work.

**Public Records Requests**

21.  Killian and its officials have thwarted Cheryl's attempts to exercise her constitutional right to participate in her local government repeatedly by failing or refusing to respond to public records requests.  Cheryl and other Killian citizens asked Mayor Sharp for a copy of water testing records

for Killian's water system.  Mayor Sharp responded that the records are not public because they are in his garage at his house.  Over the last two years, Cheryl and other Killian citizens have requested access to other public records in accordance with the provisions of Louisiana's Public Records Law.  Most of those requests remain unanswered because Mayor Sharp ordered the custodian of records, Killian Town Clerk Cathy Posey ("Posey"), to ignore any request from the Plaintiff.  Posey, for her part, has followed her boss's orders by refusing to respond to public records requests, and also ridiculing the requestor/requests in conversations with other Killian citizens at Town Hall during business hours.  A few additional instances of this are illustrated by the following facts.

22.  The Plaintiff submitted a written public records request to the town clerk (Posey), the aldermen (including alderwoman Gill and Defendants Henry, Binkley, Ballard, and Hendley), and Mayor Sharp on January 20, 2024. (See Exhibit A).  To date, the only public official who responded was Gill.  Not a single one of the defendants has responded in accordance with the Public Records Law.  Instead, Binkley responded by "unfriending" Cheryl on his personal social media account; Hendley and Ballard responded by blocking Cheryl on their respective personal social media accounts; Ballard additionally responded by blocking Cheryl from viewing the "official" Town of Killian social media pages and several other fake social media pages he uses to comment on issues anonymously.  Henry, Sharp, and Posey never responded whatsoever.

23.  The Plaintiff submitted a written public records request on June 12, 2024, asking for "a copy of all documents that support the town's expenditures for the months of April and May, 2024". (See Exhibit B).  To date, the only response has been, "Request received".

24.  Cheryl submitted a written public records request on September 10, 2024, directed to Posey, Fontenot, Erdey, Milton, and any other public official having responsive public records.  To date,

no response has been received, other than Posey saying that she will "make sure this request gets worked on" 6 days after the request was sent. (See Exhibit C). As the town clerk, Louisiana law makes Posey the default custodian of records for the Town.

25. On October 26, 2024, the Plaintiff submitted a public records request to Drake and Posey, requesting itemized invoices related to a resolution Drake allegedly drafted for Henry in an attempt to abandon the road upon which Cheryl lives and which is adjacent to property Henry owns. (See Exhibit D). Posey responded that the town has no such public records. Drake has not responded.

26. Cheryl made a verbal public records request to Mayor Sharp, Posey, Binkley, and Henry during the October 2024 Town meeting, requesting a copy of an ordinance that Defendant Henry introduced in an effort to have the town abandon the road on which Cheryl lives. To date, neither Mayor Sharp nor any other public official from whom it was requested has responded.

27. Cheryl made a verbal public records request Mayor Sharp, Posey, Binkley, and Henry during the September 2024 meeting, requesting a copy of a CEA that Mayor Sharp had signed without approval of the board of aldermen. Neither Mayor Sharp nor any other public official from whom the record was requested responded in accordance with the public records law.

28. On January 4, 2025, the Plaintiff sent a written public records request to Milton, requesting copies of certain public records, including text messages, which are public records and of which he is a custodian. To date, Milton has provided no response, in violation of the Public Records Law. (See Exhibit I).

29. On December 26, 2024, Cheryl sent a written public records request to Fontenot requesting certain public records, including summons and citations issued by the Killian Police Department – public records of which he is a custodian. Cheryl received a "Read Receipt" on December 26,

2024.  To date, Fontenot has provided no response, in violation of the Public Records Law.  (See Exhibit J).

**Public Meetings**

30.  On February 14, 2024, the Defendants held a public meeting.  Notice of, and the agenda for, the meeting was posted on the door of the town hall on February 13, 2024, which was Mardi Gras Day, a state holiday pursuant to La. R.S. 1:55. (See Exhibit E).  Prior to the meeting, the Defendants were advised that their holding and attending this meeting would be a violation of the Open Meetings Law.  However, they acted with careless disregard of Louisiana's laws and violated Cheryl's and other Killian citizens' constitutional and statutory rights by holding and attending the meeting.

31.  On March 13, 2024, the Defendants posted notice of a public meeting to be held on March 14, 2024.  The posted agenda mirrored the agenda from the February 14, 2024 meeting.  (See Exhibit G).  During the March 14, 2024 meeting, there was little to no discussion of any item on the agenda, ostensibly because the issues were discussed at the February 14, 2024 meeting.  The actions taken during both the February 14, 2024 meeting and the March 14, 2024 meeting violate the Open Meetings Law.

32.  During public meetings when Cheryl has attempted to exercise her right to participate and to speak on public issues, she was chastised, challenged, and denigrated by Mayor Sharp and Henry.

33.  Further, Mayor Sharp instructs and allows his appointed police chief and other police officers to intimidate Cheryl and other citizens in attendance.  Mayor Sharp has gone to the extent of requesting a multitude of Livingston Parish Sheriff's deputies and police officers from other jurisdictions, such as the Town of Springfield (with which the Town has no CEA) to hover over and stare down citizens during public meetings in an effort to intimidate them.  In addition, Mayor

10

Sharp uses his connections with the Livingston Parish Sheriff's Office, where his son and granddaughter work, to get these deputies to do his bidding.

34.    Cheryl has voiced her opinion about issues that were being discussed in Killian public meetings.  Many times, Cheryl has spoken in opposition to Mayor Sharp's policies and actions, as well as those of some of the other Killian public officials and employees.  However, neither Mayor Sharp nor any other public official or employee has ever said that the Plaintiff was "out of order" or unruly during any Killian town meeting.

35.    Mayor Sharp acts outside of his legal authority on a regular basis.  He has unilaterally appointed police officers and other town employees without the required board approval.  Upon information and belief, the Killian board of aldermen has not appointed a municipal attorney in accordance with La. R.S. 33:386.  This belief is based upon the following facts: (1) Cheryl has attended all town meetings that have been held since Sharp became mayor, with the exception of approximately 3, and no such appointment was made at any of the meetings she attended. (2) At one meeting Cheryl attended, the board of aldermen specifically recognized that no municipal attorney had been appointed and voted to recognize that Defendant Drake is not the lawfully-appointed municipal attorney. (3) Cheryl submitted a public records request to the town clerk, requesting a copy of the meeting minutes that documented Defendant Drake's appointment as municipal attorney and/or magistrate but, according to the town clerk, no such minutes exist. (4) Cheryl searched the website of Killian's official journal, the Livingston Parish News, read each and every publication of minutes from Killian's town meetings, and was unable to find any minutes to show that Drake or any other attorney was ever appointed as municipal attorney or magistrate for Killian.  According to La. R.S. 33:386, the municipal attorney and the magistrate are public officials who are required to be appointed at the first public meeting of a new administration.

Drake, because he has been claiming to be Killian's duly-appointed municipal attorney and magistrate since Mayor Sharp took office, and due to Mayor Sharp's allowing him to act as such, is a public official.

**Police Activities**

34. As discussed above, Cheryl's neighbor had a camper parked in the road that provides the only access to Cheryl's driveway. Fontenot, Erdey and Milton refused to make the owners move their camper, which was obstructing the road. In July of 2024 Cheryl's boat was disabled and therefore, temporarily parked in front of the camper that had been obstructing the road for over a year. Erdey sped down Cheryl's driveway and approached the residence in an aggressive manor, freighting the small child in the home, and proceeded to yell at Cheryl stating that the boat had to be moved immediately. When Cheryl requested an explanation on why the boat had to be moved but the camper didn't Erdey stated that both parties would receive a summons. The campers owner's didn't receive a summons, however, Erdey had a tow truck come and move Cheryl's disabled boat approximately 10 miles away causing further damage to the boats trailer and causing Cheryl to incur damages in the form of fees to be paid for the tow and storage. The camper remained in the road until the owner sold the property and moved it in December of 2024.

35. As mentioned above, these same neighbors had garbage scattered throughout their property. From time to time and since Cheryl acquired her property in 2020, she witnessed those neighbors burning household garbage and other miscellaneous debris on a regular basis. Mayor Sharp, Fontenot, Erdey and Milton knew about these fires, and took no action.

36. On February 3, 2025, Cheryl learned that a warrant had been issued for her arrest, ostensibly for illegal disposal of solid waste. Upon information and belief, this warrant was issued in connection with a bonfire that someone lit solely for recreational purposes on New Year's Eve,

December 31, 2024.  Cheryl does not own the property upon which the bonfire was held, Cheryl did not place anything on the bonfire, and Cheryl did not light the fire.

36.  On the evening of December 31, 2025, the Springfield Fire Department arrived to extinguish the bonfire that was burning on a property adjacent to Cheryl's property.  Before the fire department could get to its intended target, it had to pass a large bonfire that was burning on a neighbor's property.  The neighbor's fire was allowed to burn.  The fire chief, Brian Drury, ordered his people to put out the fire closest to Cheryl's property.  When Drury was asked why the neighbors' bonfire was not being extinguished, Drury told Cheryl that Mayor Sharp and one of the Killian police officers called him and told him that your Plaintiff was not allowed to have a fire and that "under no circumstances" should Drury allow the bonfire on the property adjacent to Cheryl's property be allowed.  While the fire department was extinguishing the fire, Mayor Sharp and his wife were at a get-together laughing and telling their great-granddaughter that Cheryl was going to jail for the new year.

37.  The same night, many other Killian residents had bonfires.  One of the residents, infuriated, posted on social media pictures of his large bonfire.  That bonfire contained the very same things that were being burned in the bonfire on the property adjacent to Cheryl's property. His bonfire was allowed to burn.  Only the fire thought to be Cheryl's had to be extinguished.

**Contact with Employers**

38.  Since they took their respective offices in or about July of 2022, Mayor Sharp and other Town officials have repeatedly, knowingly, and intentionally violated the Public Records Law and the Open Meetings Law.  Initially, Cheryl attempted to educate the officials about the laws, even suggesting on multiple occasions that the public officials attend the training Louisiana's Attorney General gives.  However, Cheryl's requests fell on deaf ears.  Not a single one of the defendants

attended the training.  Notably, the only public official in Killian who attended the training was alderwoman Gill, who is not a defendant in this suit.

39.  From 2022 through the drafting of this complaint, the Plaintiff has spoken out in opposition to Mayor Sharp's actions and/or inactions (such as his violating the Open Meetings Laws and Public Records Laws) and/or the actions and/or inactions of the other Killian public officials.  Also, during this time, Cheryl filed a petition for mandamus in state district court due to town officials' repeated refusal to respond to public records requests and blatant disregard for the law.

40.  Cheryl worked for a state entity in 2022 and 2023, until the new governor took office on January 8, 2024, at which time she began working at another state agency.  Upon information and belief, during 2022 and 2023, Sharp, Ballard, Henry, and Binkley tasked Drake with calling Cheryl's employer in an effort to get her fired for exercising her constitutionally guaranteed rights.  Upon further information and belief, Sharp and Ballard also contacted this employer multiple times during 2023 for the same reason:  in an attempt to retaliate for Cheryl's protected speech.  In February of 2024, a month after Cheryl was appointed to her new position, Killian officials scheduled a meeting with Cheryl's new supervisor.  This meeting was held March 4, 2024.  Sharp, Ballard, Fontenot, and Hendley travelled to Baton Rouge to attend the meeting to tattle on Cheryl for exercising her constitutional rights to freedom of speech and freedom of expression.  The public officials' complaints were based solely upon: (1) Cheryl's creation of a social media page entitled "Dissolution of the Town of Killian", the stated purpose of which is "to discuss the pros and cons of dissolving the Town of Killian", (2) Cheryl's having "brought them to court", and (3) Cheryl's speaking at town meetings about issues of public concern.  These defendants' persistent actions illustrate a pattern of harassment over more than two years.

## COUNT 1

**42 U.S.C. §1983 – Retaliation in Violation of the First Amendment of
the United States Constitution.**

41.  The Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-40, as well as the Preliminary Statement, as if fully set forth herein.

42.  42 U.S.C.A. § 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured…" To establish a First Amendment retaliation claim against an ordinary citizen, a plaintiffs must show that (1) she was engaged in constitutionally protected activity, (2) the defendants' actions caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiff's exercise of constitutionally protected conduct.

43.  In attending public meetings and speaking on issues of interest to the general public, the Plaintiff was engaging in speech that deserves the highest protection under the United States Constitution.

44.  Defendants Sharp, Ballard, Hendley, and Fontenot took retaliatory action against the Plaintiff that adversely affected the Plaintiff's constitutionally protected speech, when they scheduled a meeting with the Plaintiff's supervisor to complain about the Plaintiff's discussing dissolving the Town on social media, the Plaintiff's exercising her right to petition her government, and the Plaintiff's speaking at public meetings.  This meeting, combined with Drake, Mayor Sharp, and Ballard contacting her previous employer, in fact, chilled the Plaintiff's constitutional right to freedom of speech and expression.  Because these were the ONLY things these defendants brought up or complained about to the Plaintiff's supervisor during the meeting, it is clear that the ONLY

reason for their actions was retaliation for the Plaintiff's protected speech in violation of the First Amendment.

45.  The mayor, aldermen, chief of police, a tax collector, and town clerk are officers of the Town of Killian, per La. R.S. 33:381.  As such, they are all public officials and their actions and/or inactions, as well as their misuse of power, possessed by virtue of state law and made possible only because the they are clothed with the authority of state law are taken "under color of state law".

46.  As a direct result of these defendants' actions, Cheryl speech has been chilled, as she has self-censored due to fear of additional retaliation.  Cheryl's fear of retaliation is not, and was not, merely speculative, as illustrated by the fact that Mayor Sharp having a warrant issued and attempting to have her arrested for actions taken by someone else on someone else's property.

47.  Even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to 'produce a result which (it) could not command directly.' Speiser v. Randall, 357 U.S. 513, 526, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460. Such interference with constitutional rights is impermissible." Perry v. Sindermann, 408 U.S. 593, 597, 92 S. Ct. 2694, 2697, 33 L. Ed. 2d 570 (1972).

48.  Mayor Sharp, Fontenot, Erdey, and Milton, by enforcing laws against Cheryl without probable cause, and refusing to enforce the same laws against other citizens who are similarly situated, in

retaliation for Cheryl's protected speech that was critical of them, violated Cheryl's First Amendment right to freedom of speech.

**COUNT 2**

**42 U.S.C. §1983 – Conspiracy to Chill Plaintiff's Speech in Violation of the First Amendment of the United States Constitution and Article I, Section 7 of the Louisiana Constitution.**

49.  The Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-48, as well as the Preliminary Statement, as if fully set forth herein.

48.  The First Amendment to the United States Constitution guarantees Cheryl's rights to freedom of speech, freedom of expression, and the right to petition.  The Louisiana Constitution Article 1, Section 7, also guarantees Cheryl the right to freedom of expression.  Political speech is the most protected under both constitutions.

49.  The March 5, 2024 meeting with Cheryl's employer, which only occurred because those attending were cloaked with authority provided by state law was an egregious abuse of power that caused Cheryl extreme anxiety, embarrassment, and humiliation.  The actions of these elected public officials (Aldermen Ballard and Hendley, Mayor Sharp) and appointed public official (Chief Fontenot) constitute outrageous behavior amounting to the intentional and/or negligent infliction of emotional distress.

50.  The repeated telephone calls to Cheryl's previous employer (while she was still employed there) to tell on her for speaking at public meetings constitute outrageous conduct by Drake, Mayor Sharp, and Ballard in violation of Cheryl's constitutional rights.

51.  Upon information and belief that is highly likely to be substantiated after discovery, Defendants Ballard, Drake, Mayor Sharp, Hendley, and Fontenot entered into an agreement to

harass Cheryl and attempt to get her fired from her jobs.  Their calling supervisors at one job, and then meeting with her supervisor at the next employment were steps taken in furtherance of their conspiratorial goal, which resulted in Cheryl's speech being chilled, as she refrained from expressing her political opinions publicly thereafter.

## COUNT 3

### 42 U.S.C. §1983 – Disparate Treatment in Violation of the Fourteenth Amendment of the United States Constitution.

52.  The Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-51, as well as the Preliminary Statement, as if fully set forth herein.

53.  The defendants' pattern of harassment constitutes Category Three discrimination in violation of the 14th Amendment.  That is, the facts alleged herein constitute an orchestrated campaign of official harassment over more than 2 years.  As such, Cheryl is a "class of one" under the law. Defendants Sharp, Fontenot, Milton and Erdey are liable under 42 U.S.C.A. § 1983 for violating Cheryl's constitutional rights, as guaranteed by the Due Process Clause and Equal Protection Clause of Fourteenth Amendment.  These Defendants failed to protect Cheryl and her property from intrusion by adjacent property owners.  Cheryl repeatedly reported physical trespasses, requested code enforcement, and sought to pursue criminal charges for trespasses completed by adjacent property owners.  However, Sharp, Fontenot, Erdey, and Milton refused to enforce the laws and prevented Livingston Parish Code Enforcement agents from doing so, instead showing preference to the rights of their friends, the adjacent property owners.  Thus, Sharp, Fontenot, Erdey, and Milton created a situation where the adjacent property owners felt entitled to trespass upon Cheryl's property and impede Cheryl's right of access to her property due to these Defendants directing, aiding, and/or abetting the violations. (See Exhibit H).

## COUNT 4

**42 U.S.C. §1983 – Monell Liability.**

54.  The Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-53, as well as the Preliminary Statement, as if fully set forth herein.

55.  Mayor Sharp is the ultimate policymaker for the Town.

56.  Municipal liability can attach under Monell v. Department of Social Services, 436 U.S. 658 (1978), for even a single decision made by a final policymaker in certain circumstances, regardless of whether or not the action is taken once or repeatedly. See *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986). If an authorized policymaker approves a subordinate's decision and the basis for it, such ratification would be chargeable to the municipality under Monell. See City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988).

57.  Mayor Sharp has a has a custom, pattern, practice, and/or procedure of violating people's rights, as illustrated by his blatant disregard for Louisiana's Public Records and Open Meetings laws, his attempting to get Cheryl fired for her protected speech, and his ordering and/or ratifying his police officers' refusal to implement the laws equally towards all citizens.

58.  As a direct and proximate result of the Town's customs, patterns, practices, and/or procedures, as stated herein above, the Plaintiff's rights guaranteed to her by the First and Fourteenth Amendments of the United States Constitution were violated.

59.  As a direct and proximate result of the Defendants' unreasonable and unlawful actions, the Plaintiff has suffered and continues to suffer substantial past and future damages, compensatory, general, and punitive, including, but not limited to, severe emotional distress, mental anguish, embarrassment, and humiliation.

**Louisiana Constitution Article 12, Section 3, Louisiana's Public Records Law, and Louisiana's Open Meetings Law**

60,  The Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1-59, as well as the Preliminary Statement, as if fully set forth herein.

61.  Louisiana Constitution Article 12, Section 3 provides: "No person shall be denied the right to observe the deliberations of public bodies and examine public documents, except in cases established by law."  The purpose of Louisiana's Open Meetings Law and Public Records Law is to implement this constitutional guarantee.

62.  Killian and its officials have thwarted Cheryl's attempts to exercise her constitutional right to participate in her local government repeatedly by failing or refusing to respond to public records requests, as explained above.

63.  Cheryl is entitled to a judgment requiring the Town and its public officials to respond to her public records requests, awarding her statutory penalties for their failure to respond to her requests, as well as attorney's fees as provided for in the Public Records Law.

64.  The Open Meetings Law requires minutes to be taken at every meeting and requires them to be published in the official journal.


**WHEREFORE**, the Plaintiff is entitled to, and hereby requests, a judgment against the Defendants:

1.  Recognizing and declaring that the Defendants violated her rights under the Louisiana and United States Constitutions;

2.  Awarding her damages sufficient to compensate her for the Defendants' violation of her constitutional rights;

3.  Awarding her punitive damages in accordance with federal law for the Defendants' violation of her constitutional rights;

4.  Ordering the Defendants to give her access to and/or copies of the public records she has requested;

5.  Ordering the Defendants to comply with the Open Meetings Law by retaining recordings of the meetings in accordance with a set schedule as required by law, posting notice of meetings in accordance with the law, posting detailed agendas for public meetings as required by law, and not engaging in walking/rolling quorums/polling;

6.  Awarding her statutory damages, as provided by law, for the Defendants' failure to comply with the Public Records Law;

7.  Awarding her statutory damages for the Defendants' failure to comply with the Open Meetings Law;

8.  Awarding her all costs of this proceeding, including expert witness fees and judicial interest from the date of judicial demand;

9.  Awarding her all attorney's fees associated with this proceeding;

10.  Issuing permanent injunction prohibiting the Defendants from contacting the Plaintiff's employer and/or otherwise violating or attempting to violate her constitutional rights to freedom of speech and participation in her local government; and

11.  All other general and equitable relief available under the law.

**THE PLAINTIFF DEMANDS A TRIAL BY JURY.**

Respectfully submitted by:


/s/ Cheryl K. Sibley McKinney
Cheryl K. Sibley McKinney
In Proper Person
20240 Tickfaw Lane
Killian , Louisiana  70462
Phone:  (985) 687-4009
Email:  Cheryld1974@yahoo.com