# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| CHERYL SIBLEY MCKINNEY | * |
| | * |
| VERSUS | * CASE NO. 3:25-cv-00080-SDD-RLB |
| | * |
| RONALD L. SHARP, SR., BRENT BALLARD, | * |
| LYNDON HENDLEY, STEVEN FONTENOT, | * |
| BRIAN BINKLEY, ERNEST DRAKE, III, | * |
| CATHEY POSEY, JOHN HENRY, BLAKE | * |
| ERDEY, KYLE BRENT MILTON, AND THE | * |
| TOWN OF KILLIAN | * |
| | * |

*************************************************************************

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS, PURSUANT TO *FRCP RULE 12(b)(6)*, FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

MAY IT PLEASE THE COURT:

Movers Ronald L. Sharp, Sr., Brent Ballard, Lyndon Hendley, Steven Fontenot, Brian Binkley, Ernest Drake, III, Cathey Posey, John Henry, Blake Erdey, Kyle Brent Milton, and the Town of Killian respectfully submit that the law is clear in that, to survive a *Rule 12(b)(6)* motion to dismiss, a plaintiff must plead enough facts to state a claim to relief that is plausible on its face. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin v. Eby Construction Company v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Court explained "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do". *Twombly*, 550 U.S. at 555. A complaint is also insufficient if it merely 'tenders 'naked assertion[s]' devoid of 'further factual enhancement.''

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully". *Twombly*, supra, 550 U.S. at 570. "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff'". *Taha v. William Marsh Rice University*, 2012 WL 157099 at *2 (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).

Plaintiff's claimed federal law causes of action are alleged *42 U.S.C. §1983* violations of her civil rights pursuant to the First and Fourteenth Amendments of the Constitution of the United States of America. Plaintiff initially filed her suit in Louisiana state court, but movers removed it to federal court. (Doc. 1). Movers then brought a motion to dismiss, pursuant to *FRCP Rule 12(b)(6)*, for failure to state a claim upon which relief can be granted (Doc. 6). However, before this Honorable Court could rule on said motion, plaintiff filed a first amended complaint (Doc. 9). As a result, in accordance with Local Rule 12, the Court terminated movers' motion without prejudice to refile based on the allegations in plaintiff's first amended complaint (Doc. 10). Movers hereby again respectfully submit that – even in her first amended complaint (Doc. 9) – plaintiff still fails to state a claim upon which relief can be granted.

As this Honorable Court can clearly see, virtually all of plaintiffs' claims are still heavily based in Louisiana state law. Her only allegations dealing in federal law are her attempts to try to couch her Louisiana state law allegations as ambiguous purported violations of her rights under the First and Fourteenth Amendments. However, under applicable law, this Honorable Court is to look at such attempts as suspect. As the United States Supreme Court has set forth:

> "[E]ven when the state action discloses a contested and substantial federal question, the exercise of federal jurisdiction is subject to a possible veto. For the federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor

between state and federal courts governing the application of § 1331. … Because arising-under jurisdiction to hear a state-law claim always raises the possibility of upsetting the state-federal line drawn (or at least assumed) by Congress, the presence of a disputed federal issue and the ostensible importance of a federal forum are never necessarily dispositive; there must always be an assessment of any disruptive portent in exercising federal jurisdiction. See also *Merrell Dow*, 478 U.S., at 810, 106 S.Ct. 3229.

These considerations have kept us from stating a 'single, precise, all-embracing' test for jurisdiction over federal issues embedded in state-law claims between nondiverse parties. *Christianson v. Colt Industries Operating Corp.,* 486 U.S. 800, 821, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (STEVENS, J., concurring). We have not kept them out simply because they appeared in state raiment, as Justice Holmes would have done, see *Smith, supra,* at 214, 41 S.Ct. 243 (dissenting opinion), but neither have we treated 'federal issue' as a password opening federal courts to any state action embracing a point of federal law. Instead, the question is, does a state-law claim necessarily raise a stated federal issue, **actually disputed and substantial**, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities. (Emphasis added).

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313–14, 125 S.Ct. 2363, 2367–68, 162 L. Ed. 2d 257 (2005).

## COUNTS 1 AND 2 OF PLAINTIFF'S FIRST AMENDED COMPLAINT

With regard to plaintiff's allegation that movers Sharp, Fontenot, Ballard, Hendley, and Drake purportedly "engaged in a conspiracy under 42 U.S.C.A. §1983 to deprive [plaintiff] of her First Amendment right to free speech" when they allegedly called and/or met with her employer "to inflict unconstitutional injury to [plaintiff's] personal and professional reputation in retaliation for exercising her First Amendment rights", movers similarly respectfully submit that plaintiff has failed to state a claim upon which relief can be granted.

For a valid *§ 1983* conspiracy claim, the plaintiff must not only allege facts that establish the existence of a conspiracy involving state action, but also a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy. *Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019). No deprivation, no *§ 1983* conspiracy. Id.

"'[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398, 139 S.Ct. 1715, 1722, 204 L.Ed.2d 1 (2019), citing *Hartman v. Moore*, 547 U.S. 250, 256, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006). However:

> "To prevail on such a claim, a plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.' *Hartman*, 547 U.S. at 259, 126 S.Ct. 1695. It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury. Specifically, **it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive. *Id.*, at 260, 126 S.Ct. 1695 (recognizing that although it 'may be dishonorable to act with an unconstitutional motive,' an official's 'action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway')".** (Emphasis added).

*Id.*, 587 U.S. at 398–99, 139 S.Ct. at 1722.

Plaintiff herself concedes that, at all material times, she was employed by different government offices of the State of Louisiana. (Doc. 9, at Paragraph 40). The purported "speech" which she admits she was in a very public way undertaking was a concerted effort by her to have the Town of Killian dissolved. (Doc. 9, at Paragraph 40). Movers respectfully submit that, to alert plaintiff's State of Louisiana government supervisors that one of their employees was publically calling for the dissolution of one of the towns in their state, on its face does not rise to the level of being "retaliatory animus". It is the very kind of action cited in *Nieves*, supra, that – even if it had been "colored by some degree of bad motive" – does not amount to a constitutional tort because it was an action that in all likelihood "would have been taken anyway".

Further, movers respectfully submit that plaintiff does not set forth a viable claim of "injury". While plaintiff alleges that the indicated movers called and/or met with her supervisor, there is no allegation that any adverse action was taken by her employer as a result. She claims

that it has "chilled" her "speech" by purportedly causing her to "self-censor[]". (Doc. 9, at

Paragraph 46). However, it is respectfully submitted that same is simply the kind of "formulaic

recitation of the elements of a cause of action" warned against in *Twombly*, supra.

As the U.S. Fifth Circuit Court of Appeals has set forth:

"In *Colson v. Grohman*, this court held that a First Amendment retaliation injury was not sufficient for such a claim where a plaintiff 'alleged only that she was the victim of criticism, an investigation (or an attempt to start one), and false accusations,' referring to these as 'harms that ... are not actionable under our First Amendment retaliation jurisprudence.' 174 F.3d 498, 512 (5th Cir. 1999). Following *Colson*, we have held that being subjected to and defending oneself from an investigation while suffering its concomitant stress does not satisfy the injury requirement. *See Slegelmilch v. Pearl River Cnty. Hosp. & Nursing Home*, 655 F. App'x 235, 239–40 (5th Cir. 2016) (unpublished); *Matherne v. Larpenter*, No. 99-30746, 2000 WL 729066, at *3 (5th Cir. May 8, 2000) (unpublished) (holding 'that retaliatory criticisms, investigations, and false accusations that do not lead to some more tangible adverse action are not actionable under § 1983' (quoting *Colson*, 174 F.3d at 513)). In line with these decisions, Reitz's injuries, such as they are, do not rise to the level of a constitutional violation. *See, e.g., Colson*, 174 F.3d at 514 (dismissing First Amendment retaliation claim under § 1983 where an insufficient injury was alleged)."

*Reitz v. Woods*, 85 F.4th 780, 790 (5th Cir. 2023).

## COUNT 3 (AND LAST PARAGRAPH OF COUNT 1) OF PLAINTIFF'S FIRST AMENDED COMPLAINT

With regard to plaintiff's allegation that movers Sharp, Fontenot, Milton, and Erdey

purportedly violated her First and Fourteenth Amendment rights in their enforcement of state and

local laws (Doc. 9, at Paragraphs 48, 52, and 53), movers respectfully submit that plaintiff has

failed to state a claim upon which relief can be granted. As the U.S. Fifth Circuit Court of

Appeals has set forth:

"[W]hen the police fail to enforce the law strictly against wrongdoers, decisions not to prosecute cannot be the subject of policy determinations for purposes of section 1983 liability. *See generally Pinder v. Johnson*, 54 F.3d 1169 (4th Cir.1995) (en banc). The *DeShaney* decision absolves public officials of individual section 1983 liability for failure to protect citizens absent a 'special

relationship' such as official custody of the victim. *See DeShaney v. Winnebago Cty. Dep't of Social Servs.,* 489 U.S. 189, 201, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989); *Walton v. Alexander,* 44 F.3d 1297, 1298 (5th Cir.1995) (en banc). A city cannot be liable to a member of the public for failing to prosecute a known wrongdoer if no individual City employee could be liable constitutionally for the same neglect."

*Piotrowski v. City of Houston* 237 F.3d 567, 582 (5th Cir. 2001).

As the U.S. Supreme Court, in *DeShaney,* explained:

"[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without 'due process of law,' but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means. Nor does history support such an expansive reading of the constitutional text. Like its counterpart in the Fifth Amendment, the Due Process Clause of the Fourteenth Amendment was intended to prevent government 'from abusing [its] power, or employing it as an instrument of oppression,' *Davidson v. Cannon, supra,* 474 U.S., at 348, 106 S.Ct., at 670; see also *Daniels v. Williams, supra,* 474 U.S., at 331, 106 S.Ct., at 665 (' ' 'to secure the individual from the arbitrary exercise of the powers of government,' ' ' and 'to prevent governmental power from being 'used for purposes of oppression' ') (internal citations omitted); *Parratt v. Taylor,* 451 U.S. 527, 549, 101 S.Ct. 1908, 1919, 68 L.Ed.2d 420 (1981) (Powell, J., concurring in result) (to prevent the "affirmative abuse of power"). Its purpose was to protect the people from the State, not to ensure that the State protected them from each other."

489 U.S. at 195–96, 109 S.Ct. at 1003.

As the U.S. Supreme Court has also held:

"Trespassing upon private property is unlawful in all States, as is, in many States and localities, intentionally obstructing the entrance to private premises. These offenses may be prosecuted criminally under state law, and may also be the basis for state civil damages. They do not, however, give rise to a federal cause of action."

*Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263, 286, 113 S.Ct. 753, 768, 122 L.Ed.2d 34 (1993).

COUNT 4 OF PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff's allegation that mover the Town of Killian allegedly violated her *42 U.S.C. §1983* civil rights because its mayor mover Sharp allegedly ratified his subordinate's [mover Fontenot's] conduct by directing and/or allowing mover Fontenot to contact plaintiff's State of Louisiana government supervisors also fails to state a claim upon which relief can be granted. Since – as is set forth above – the allegations against mover Fontenot fail to state a *§1983* claim upon which relief can be granted, any allegation against mover Village of Killian for purportedly "ratif[ying]" mover Fontenot's alleged action also fails to state a *§1983* claim upon which relief can be granted. Additionally, as per applicable law, vicarious liability doesn't apply to *§1983* suits. *Shaw*, supra, at 417.

Further, to establish governmental liability under *42 U.S.C. §1983*, a plaintiff must show that (1) an official policy (2) promulgated by the governmental policymaker (3) was the moving force behind the violation of a constitutional right. *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (citing *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001))." Plaintiff has failed to set forth a "custom or policy" sufficient to state a claim upon which relief can be granted against the Town of Killian. As was explained in detail in *Malone v. City of Fort Worth, Texas*, 297 F.Supp.3d 645 (N.D. Tex. 2018):

> "Consequently, to establish municipal liability under § 1983, a plaintiff…must first identify an official policy of the municipality, which may take the form of:
>
> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officer or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.

> Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force, et al.*, 379 F.3d 293, 309 (5th Cir. 2004)(quoting *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir.1992) ); *see also Prince v. Curry,* 423 Fed.Appx. 447, 450 (5th Cir. 2011)(official municipal policy 'includes the decisions of [the municipality's] lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law')(quoting *Connick,* 563 U.S. at 60, 131 S.Ct. 1350.)

Next, a plaintiff must establish that the identified policy came from a policymaker of the municipality. 'A policy or custom becomes official for purposes of § 1983 when it results from the decision or acquiescence of the municipal officer or body with 'final policymaking authority' over the subject matter of the offending policy.' *Gros v. City of Grand Prairie*, 181 F.3d 613, 615 (5th Cir. 1999) (citing *Jett v. Dallas Ind. Sch.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989) ). If the policy arises from a persistent widespread practice or custom that is so common it could be said to represent municipal policy, actual or constructive knowledge of such practice or custom must be shown. *See Hicks–Fields v. Harris Cty.,* 860 F.3d 803, 808 (5th Cir. 2017). In the Fifth Circuit,

> [a]ctual knowledge may be shown by such means as discussion at council meetings or receipt of written information. Constructive knowledge may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities, as, for example, where the violations were so persistent and widespread that they were the subject of prolonged public discussion or a high degree of publicity.

*Id.*(citing *Bennett v. City of Slidell,* 728 F.2d 762, 768 (5th Cir. 1984) ).

Finally, a plaintiff must 'demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal [policy] and the deprivation of federal rights.' *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). For a municipality to be liable on account of its policy or custom, the plaintiff must show that (1) the policy *itself* violated federal law or authorized or directed the deprivation of federal rights, or (2) the policy was adopted or maintained with deliberate indifference as to the known or obvious consequence that it would result in the violation of someone's federal rights. *Deep E. Tex.*, 379 F.3d at 309 (citations omitted).

Where the plaintiff can prevail only by showing option (2), that is, by showing that the suspect policy was adopted or maintained with deliberate indifference, a demonstration of at least a pattern of similar violations of federal rights is generally required. *See id.* A single violation or even a handful of violations likely will not be enough for a court to conclude that a municipality maintained the policy with deliberate indifference to the rights of persons within its jurisdiction. Without notice that a facially lawful policy is resulting in violations of federal rights, a municipality cannot be said to be deliberately indifferent to a result. *See Bd. of Cty. Comm'rs,* 520 U.S. at 408, 117 S.Ct. 1382."

*Id.*, at 654–55.

The only allegation which plaintiff makes concerning an alleged official custom or policy is her re-hash of her failure-to-state-a-valid-federal-claim allegations dealing with Louisiana state public records and open meetings laws and the alerting of plaintiff's State of Louisiana government supervisors by town officials that one of their employees was publically calling for the dissolution of one of the towns in their state. (Doc. 9, at Paragraph 57). Movers respectfully submit that that falls far short of a purported "pattern of similar violations of federal rights", as per *Malone*, supra) with regard to the Town of Killian.

Even plaintiff's attempted allegation that the "single decision" exception of *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) and *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988) could apply is misplaced herein. As the U.S. Supreme Court itself specifically stated in *Pembaur*:

"The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. See, *e.g., Oklahoma City v. Tuttle,* 471 U.S., at 822–824, 105 S.Ct., at 2435–2436."

*Id.*, 475 U.S. at 481–82, 106 S.Ct. at 1299.

The alerting of plaintiff's State of Louisiana government supervisors by town officials that one of their employees was publically calling for the dissolution of one of the towns in their state

(i.e., the only actual purported "retaliatory" custom or policy allegation) would clearly have been within "discretion in the exercise of [a] particular function". *Pembaur*, supra.

## PLAINTIFF'S PUNITIVE DAMAGES CLAIM

With her *§1983* claims falling for failure to state a claim upon which relief can be granted, plaintiff's punitive damages claim also falls. Under Louisiana state law, a plaintiff has no cause of action for punitive or exemplary damages except where authorized by statute. *Williams v. State Through Dep't of Wildlife & Fisheries*, 95-2456 (La. App. 1st Cir. 11/20/96), 684 So.2d 1018, 1022, *writ denied*, 96-3069 (La. 3/7/97), 689 So.2d 1372, citing *Edmonds v. Boh Bros. Construction Co.,* 522 So.2d 1166, 1167 (La. App. 4th Cir.1988). Plaintiff has failed to sufficiently plead such Louisiana state law statutory authority for any claim of entitlement to punitive and/or exemplary damages and has thus failed to state a claim upon which relief can be granted in this regard, as well.

## PLAINTIFF'S ATTORNEY'S FEES CLAIM

Additionally, plaintiff fails to state a claim upon relief can be granted when she claims entitlement to any attorney's fees. (Doc. 1-2, Page 10, at Subsection 9 of Paragraph 28). She is appearing herein "in proper person" and is not represented by counsel.

## PLAINTIFF'S LOUISIANA STATE LAW CLAIMS

Movers respectfully submit that it is not clear from plaintiff's first amended petition whether she has now foregone the Louisiana state law intentional and/or negligent infliction of emotional distress claims she made in her original state court suit. In an abundance of caution, however, movers will address same.

The bulk of the activity for which she appears to possibly be claiming such intentional and/or negligent infliction of emotional distress is alleged to have taken place in 2022 and 2023.

(Doc. 9, at Paragraph 40). Under applicable law, "[c]laims for intentional infliction of emotional distress are [] governed by the one-year prescriptive period for delictual actions in La. Civ.Code art. 3492." *Alcorn v. City of Baton Rouge*, 2002-0952 (La. App. 1st Cir. 12/30/04), 898 So.2d 385, 388, *writ denied*, 2005-0255 (La. 4/8/05), 899 So.2d 12, citing *Bustamento v. Tucker,* 607 So.2d 532, 541 (La. 1992). So are claims for negligent infliction of emotional distress. *Albe v. City of New Orleans*, 2014-0186 (La. App. 4th Cir. 9/17/14), 150 So.3d 361, 367, *writ denied*, 2014-2166 (La. 12/8/14), 153 So.3d 445. The instant lawsuit was not filed until January 14, 2025. (Doc. 1-2, Page 1). Accordingly, plaintiff has also failed to state a claim upon which relief can be granted for any purported Louisiana state law intentional and/or negligent infliction of emotional distress claims based on activity alleged to have taken place in 2022 and 2023.

Further, even with regard to plaintiff's possible attempt to claim a purported Louisiana state law intentional and/or negligent infliction of emotional distress claim for certain of the movers' 2024 meeting with her State of Louisiana government supervisor, plaintiff again fails to state a claim upon which relief can be granted.

As the Louisiana courts have explained, under Louisiana law:

"A plaintiff seeking damages for intentional infliction of emotional distress must establish three elements: (1) that the defendant's conduct was extreme and outrageous; (2) that the emotional distress suffered was severe; and (3) [th]at the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. *Cortes v. Lynch,* 02–1498, p. 9 (La.App. 1st Cir.5/9/03), 846 So.2d 945, 951, citing *White v. Monsanto Co.,* 585 So.2d 1205, 1209 (La.1991). The required conduct under the first element 'must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.' *White,* 585 So.2d at 1209." (Emphasis added).

*Cook v. Am. Gateway Bank,* 2010-0295 (La. App. 1st Cir. 9/10/10), 49 So.3d 23, 36.

Plaintiff's own allegation regarding the public officials' complaints in that meeting (Doc. 9, Paragraph 40) fall far below conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community".

Similarly, under applicable Louisiana state law, two of the required elements for negligent infliction of emotional distress are that the defendant's substandard conduct was a legal cause of injuries to the plaintiff and actual damages. *Barrino v. E. Baton Rouge Par. Sch. Bd.*, 96-1824 (La. App. 1st Cir. 6/20/97), 697 So.2d 27, 33–34. Further, recovery for negligent infliction of emotional distress is limited to cases involving the "especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious". *Id.*, citing *Moresi v. State, Department of Wildlife and Fisheries,* 567 So.2d 1081, 1096 (La.1990). Again – as is set forth supra – while plaintiff alleges that the indicated movers called and/or met with her State of Louisiana government supervisor, there is no allegation that any adverse action was taken by her employer as a result.

Further, several of plaintiff's attempted claims under the Louisiana public records request law also fail to state a claim upon which relief can be granted. Under applicable law, a person seeking disclosure of public records under the public records law must actually make a request <u>to the custodian of the records he seeks</u>. (Emphasis added). *Bixby v. Arnold*, 2019-0477 (La. App. 4th Cir. 12/5/19), 287 So.3d 43, *writ denied*, 2020-00275 (La. 3/16/20), 370 So.3d 732, *writ denied*, 2019-02005 (La. 3/16/20), 370 So.3d 733. Additionally – even if the request is made to the actual custodian – that custodian need only produce or make available for copying, reproduction, or inspection the existing records containing the requested information, and is not required to create new documents in the format requested. *Zillow, Inc. v. Gardner*, 2021-1172

(La. App. 1st Cir. 4/8/22), 341 So.3d 765. *Zillow, Inc. v. Bealer*, 2021-545 (La. App. 3rd Cir. 2/2/22), 333 So.3d 854, writ denied , 2022-00378 (La. 5/10/22), 337 So.3d 908.

Movers respectfully submit that – with a dismissal of plaintiff's attempted federal law claims – this Honorable Court is not likely to retain jurisdiction over plaintiff's Louisiana state law public records request claims. However, for instance, with regard to plaintiff's alleged verbal "requests" (Doc. 9, at Paragraphs 26 and 27), plaintiff's apparently blurting out in a Town meeting that she wanted something does not rise to the required specific request to the actual custodian. *Bixby*, supra.

For these reasons, movers Ronald L. Sharp, Sr., Brent Ballard, Lyndon Hendley, Steven Fontenot, Brian Binkley, Ernest Drake, III, Cathey Posey, John Henry, Blake Erdey, Kyle Brent Milton, and the Town of Killian request that this motion to dismiss, pursuant to *FRCP Rule 12(b)(6)*, be granted, and that the above entitled and numbered cause be dismissed, at plaintiff's costs.

Respectfully submitted,

**MOODY LAW FIRM**


  *s/Christopher Moody*
Christopher Moody, LA Bar Roll No. 9594
cmoody@cmoodylaw.com
Albert D. Giraud, LA Bar Roll No. 18911
agiraud@cmoodylaw.com
1250 Southwest Railroad Ave., Suite 170
Hammond, Louisiana 70403
Ph.:    (985) 542-1351
Fax:    (985) 542-1354

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served upon all counsel of record, either electronically or by placing same in the U.S. Mail, postage prepaid, or by Electronic Notice.

Hammond, Louisiana, this 6th day of March, 2025

_s/Christopher Moody_
Christopher Moody