## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**CHERYL SIBLEY MCKINNEY**     \*
            \*
**VERSUS**           \*      **CASE NO. 3:25-cv-00080-SDD-RLB**
            \*
**RONALD L. SHARP, SR.,**      \*
**BRENT BALLARD,**          \*
**LYNDON HENDLEY,**        \*
**STEVEN FONTENOT,**        \*
**BRIAN BINKLEY,**          \*
**ERNEST DRAKE, III,**         \*
**CATHEY POSEY, JOHN HENRY,**   \*
**BLAKE ERDEY,**            \*
**KYLE BRENT MILTON,**       \*
**AND THE TOWN OF KILLIAN**    \*

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

### <u>MEMORANDUM IN OPPOSITION TO THE DEFENDANTS' MOTION TO DISMISS, PURSUANT TO *FRCP RULE 12(b)(6))*, FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED</u>

**MAY IT PLEASE THE COURT:**

      Your Plaintiff, Cheryl Sibley McKinney ("Plaintiff" or "McKinney"), respectfully submits this opposition to the Motion to Dismiss filed by Defendants Ronald L. Sharp, Sr. ("Sharp"), Brent Ballard ("Ballard"), Lyndon Hendley ("Hendley"), Steven Fontenot ("Fontenot"), Brian Binkley ("Binkley"), Ernest Drake, III ("Drake"), Cathey Posey ("Posey"), John Henry ("Henry"), Blake Erdey ("Erdey"), Kyle Brent Milton ("Milton"), and the Town of Killian ("Killian"), as follows:

**ARGUMENT**

**<u>Standard for Granting Motion to Dismiss</u>**

      The defendants are attempting to unlawfully impose upon the plaintiff a

heightened pleading standard, rather than that required by law.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. [Masel v. Villarreal, 924 F.3d 734, 742–43 (5th Cir. 2019)] (cleaned up). In conducting this analysis, we accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiffs. *Longoria Next Friend of M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 263 (5th Cir. 2019) (cleaned up). We do not require detailed factual allegations, but the complaint must contain sufficient facts to allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A complaint's naked assertion[s] devoid of further factual enhancement will not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955). Additionally, courts are not bound to accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); see also *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (holding that the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"), internal quotations omitted.

In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

*Gomez v. Galman*, 18 F.4th 769, 775 (5th Cir. 2021).

## The Defendants' Jurisdictional Argument

The defendants' jurisdictional argument is disingenuous. McKinney filed her original petition in state court on January 14, 2025. Then, the defendants removed the suit to federal court on January 28, 2025. Rec. Doc. 1. In their Notice of Removal, the defendants argued

> Because plaintiff's petition alleges issues governed by federal law, these are claims over which this Honorable Court has original jurisdiction, without respect to the amount in controversy and without regard to the citizenship of the parties. 28 USC §1331. Therefore, pursuant to the provisions of 28 USC §1441(a), this case can be removed to the United States District Court for the Middle District of Louisiana.
>
> Plaintiffs other claims are brought under Louisiana state law. However, pursuant to the provisions of 28 US.C §1367 and 28 US.C §1441(c), this Honorable Court has supplemental jurisdiction over those claims and said claims can be removed to this Honorable Court, as well."

Rec. Doc. 1, page 1, paragraph 3; page 2, paragraph 4. Now, in their <u>Memorandum in Support of Motion to Dismiss, Pursuant to *FRCP Rule 12(b)(6)*, for Failure to State a Claim Upon Which Relief Can Be Granted</u> ("Second Memorandum"), the defendants attempt to persuade this Honorable Court that there is a jurisdictional issue because both the original petition and the amended complaint contain some claims based upon Louisiana state law. They now contend that

> [V]irtually all of plaintiffs' [sic] claims are still heavily based in Louisiana state law. Her only allegations dealing with federal law are her attempts to try to couch her Louisiana state law allegations as ambiguous purported violations of her rights under the First and Fourteenth Amendments. However…this Honorable Court is to look at such attempts as suspect." Rec. Doc 11-1, page 2.

They did not make this argument in their First Memorandum and, since the time that the defendants removed this matter, McKinney's claims have not changed. McKinney's Amended Complaint, drafted and filed in response to the defendants' First Motion to Dismiss, set out additional facts to clarify the basis of

her claims and help move this matter forward.  Instead, the defendants filed their Second Motion to Dismiss and Second Memorandum, arguing that this Honorable Court now has no jurisdiction over <u>the very same claims</u> that they previously argued formed the basis for their removing the case.  Then, for the majority of their Second Memorandum, they argue that McKinney has not stated a claim under 42 U.S.C. 1983 (federal law) for the defendants' violating her rights as guaranteed under the First and Fourteenth Amendments to the United States Constitution. Rec. Doc. 11-1, pages 3-10.  This is ludicrous.  If this Honorable Court has no jurisdiction now, it had no jurisdiction when the case was removed, meaning the defendants either attempted to hoodwink the Court then, or they are attempting to do so now.

## Government Conspiracy and Retaliation

The defendants argue that McKinney has not stated a claim under 42 U.S.C. 1983.  First, they argue that McKinney has not alleged sufficient facts to establish that the defendants who were engaged in the conspiracy to deprive her of her rights and took steps in furtherance of the conspiracy actually deprived her of her right to freedom of speech as guaranteed by the First Amendment to the United States Constitution. Rec. Doc. 11-1, page 3.  Then, they argue that the conspirators would have taken the steps they took, regardless of whether McKinney engaged in protected speech or not.  Finally, they argue that McKinney's having to self-

4

censure is insufficient damage to constitute "injury" under the First Amendment.

These arguments have no basis in fact or law.

***No Deprivation, No § 1983 Conspiracy, and No Logic***

1. Deprivation Through Retaliation

The First Amendment to the United States Constitution prohibits government officials from retaliating against individuals "for engaging in protected speech". *Nieves v. Bartlett*, 587 U.S. 391, 398, 139 S. Ct. 1715, 1722, 204 L. Ed. 2d 1 (2019), quoting *Hartman v. Moore*, 547 U.S. 250, 256, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006). The defendants cite the United States Supreme Court, which has stated

> If an official takes adverse action against someone based on that forbidden [retaliatory] motive, and "non-retaliatory grounds are in fact insufficient to provoke the adverse consequences," the injured person may generally seek relief by bringing a First Amendment claim. *Ibid.* (citing *Crawford-El v. Britton*, 523 U.S. 574, 593, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998); *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274, 283–284, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)).

> To prevail on such a claim, a plaintiff must establish a "causal connection" between the government defendant's "retaliatory animus" and the plaintiff's "subsequent injury." *Hartman*, 547 U.S. at 259, 126 S.Ct. 1695. It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury. Specifically, it must be a "but-for" cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive. *Id.,* at 260, 126 S.Ct. 1695 (recognizing that although it "may be dishonorable to act with an unconstitutional motive," an official's "action colored by some degree of bad motive does not amount to a constitutional tort if that action

would         have         been         taken         anyway").

*Id.*, 587 U.S. 391, 398–99, 139 S. Ct. 1715, 1722, 204 L. Ed. 2d 1 (2019).  Once a plaintiff

demonstrates that his/her protected speech (e.g., expression, activity) was a

substantial or motivating factor in the defendants' adverse action, the burden

shifts to the defendants to prove that the same action would have been taken even

in the absence of the retaliatory animus. *Id.*

The defendants argue that, had McKinney not engaged in protected speech,

as alleged in her Amended Complaint, they still would have engaged in the

retaliatory actions that McKinney alleges violated her First Amendment rights.

Rec. Doc. 11-1, page 4.  In her Amended Complaint, McKinney alleges that these

government officials retaliated against her for engaging in protected speech

because they (1) made repeated telephone calls to one of her employers from 2022

to 2024 to tattle on her for speaking out in opposition to these officials' and for

petitioning a court for a client whose rights under state law were violated by these

officials, and (2) met with her current employer to complain about her <u>speaking in</u>

<u>public meetings</u>, creating a social media page (the actual stated purpose of which

is "<u>to discuss</u> the pros and cons of dissolving the Town of Killian")[1], and

---

[1] The defendants statement that "[t]he purported "speech" which she admits she was in a very public way undertaking was a concerted effort by her to have the Town of Killian dissolved" is incorrect.  Louisiana law provides the means by which a citizen may engage in a "concerted effort" to dissolve a town in La. R.S. 33:251.  If McKinney was "undertaking a concerted effort" to dissolve Killian, it stands to reason that she would have followed the provisions of Louisiana law that allow her to try to do so.

petitioning the state court for redress of wrongs committed against other Killian citizens by certain of these co-conspirators. Rec. Doc. 9, page 14, paragraph 40; page 15, paragraph 44.  No other subjects were broached.

The defendants' complaints to McKinney's employers were based solely on her engaging in protected speech and expression about political issues.  The co-conspirators attempted to get McKinney fired from her jobs, thereby taking away her means of supporting herself and her minor children.  Many other Killian citizens have discussed dissolving Killian.  Other Killian citizens have spoken out against Killian's public officials, the officials harassing citizens (including McKinney), and the officials violating Killian citizens' federal and state constitutional rights.  Some of these other citizens are state employees.  But the co-conspirators did not go to their employers in a concerted attempt to get them fired.  Thus, to believe that the defendants' "action[s] would have been taken" if McKinney had not expressed herself defies logic.

2.  Injury – No Adverse Action By Employers

The defendants argue that McKinney "does not set forth a viable claim of "injury" because, even though the defendants repeatedly telephoned one of her employers over a two-year period, and met with her current employer soon after she began her new position, "there is no allegation that any adverse action was taken by her employer as a result" of their unlawful actions. Rec. Doc. 11-1, page

4. The defendants' arguments here are misplaced. The law does not require that McKinney allege that her employer took any adverse action. The instant case did not arise from employment discrimination and McKinney's employer is not a defendant in this case.[2] Nor did the claims in this suit (initially)[3] arise out of alleged criminal activity as did the case of *Reitz v. Woods* and *Colson v. Grohman*, both of which were cited by the defendants. Instead, here, the retaliatory action was the co-conspirators' repeatedly telephoning supervisory personnel at her former job and meeting with her current supervisor, as alleged in the Amended Complaint. Rec. Doc. 9, page 15, paragraph 44; page 17, paragraphs 49-51.

After many hours of research, it is impossible to find a case about public officials going to a private citizen's employer to get her fired, as did the government officials in the instant case. However, the United States Supreme Court's reasoning in *Heffernan v. City of Paterson, N.J.*, 578 U.S. 266, 136 S.Ct. 1412, 194 L. Ed. 2d 508 (2016), is more on point than the cases the defendants cite. In *Heffernan*, the United States Supreme Court held, "[w]hen an employer demotes an employee out of a desire to prevent the employee from engaging in protected political activity, the employee is entitled to challenge that unlawful action under

---

[2] In fact, on March 6, 2025, McKinney's employer wrote a letter to the co-conspirators, explaining that they were violating McKinney's rights and expressing concern about them having sought to retaliate against her for engaging in Constitutionally protected activity.

[3] Just after this suit was filed, several of the defendants conspired to have McKinney arrested for a New Year's Eve celebration bonfire that was lit on property not belonging to McKinney, that she did not start, and to which she did not contribute materials.

the First Amendment and § 1983". 578 U.S. 266, 270, 136 S. Ct. 1412, 1417, 194 L.

Ed. 2d 508 (2016).  The Supreme Court reasoned that

> [t]he constitutional harm at issue in the ordinary case consists in large part of discouraging employees—both the employee discharged (or demoted) and his or her colleagues—from engaging in protected activities. The discharge of one tells the others that they engage in protected                activity                at                their                peril.

*Heffernan*, 578 U.S. at 273, 136 S. Ct. at 1419, 194 L. Ed. 2d 508 (2016).  The Supreme

Court further reasoned that the Constitution prohibits a government employer

from taking adverse action against an employee because the employee supports a

particular political candidate or speaks on a public issue. *Id*.  The plaintiff in

*Heffernan* was employed by a municipality whose government officials thought he

had supported a certain mayoral candidate. *Id*.  Based upon this belief, the plaintiff

was demoted.

   *Heffernan* is not exactly on point, but it is instructive.  There, a public official

took adverse action against a citizen (employee) due to the citizen's (employee's)

having (allegedly) engaged in protected political activity.  Here, several public

officials took adverse action against a citizen due to the citizen's engaging in

protected political speech and expression (speaking at public meetings, engaging

in discussions on social media, and petitioning her government for redress of her

grievances). Rec. Doc. 9, page 15, paragraph 44; page 17, paragraphs 49-51.  If the

government officials in *Heffernan* were constitutionally prohibited from taking

adverse action (initiating a demotion) against the plaintiff in that case, then the government officials in the instant case should not be allowed to take adverse action (trying to get McKinney fired) against a private citizen. Killian's government officials could not fire one of Killian's employees for engaging in protected activities, and they should not be allowed to attempt to get a private citizen fired or subjected to discipline at work based upon protected activities. In agreement with this notion, the Fifth Circuit has stated,

> if government officials [are] permitted to impose…penalties in retaliation for an individual's speech, then the government would be able to stymie or inhibit his exercise of rights in the future and thus obtain indirectly a result that it could not command directly.

*Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).

3.  Injury – Chilling Effect of Defendants' Actions

The defendants incorrectly argue that McKinney has "not set forth a viable claim of injury". Rec. Doc. 11-1, page 4. In the Fifth Circuit,

> to establish a First Amendment retaliation claim against an ordinary citizen, the plaintiff must show that (1) they were engaged in constitutionally protected activity, (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise          of          constitutionally          protected          conduct.[4]

---

[4] Only the second requirement will be discussed here because the defendants do not attack the fact that McKinney was involved in protected political speech and expression, and the third prong is discussed above.

*Id.*, 290 F.3d 252, 258 (5th Cir. 2002).   The injury McKinney is required to demonstrate here is "the deprivation of a constitutional right".   *Id.*   Per the Fifth Circuit Court of Appeals,

> The effect on freedom of speech may be small, but since there is no justification for harassing people for exercising their constitutional rights it need not be great in order to be actionable.  The district court correctly ruled that a retaliation claim requires some showing that the plaintiffs' exercise of free speech has been curtailed. *See Suarez Corp. Indus. v. McGraw,* 202 F.3d 676, 686 (4th Cir.2000); *Spear v. Town of West Hartford,* 954 F.2d 63, 67 (2d Cir.1992); *Sullivan v. Carrick,* 888 F.2d 1, 4 (1st Cir.1989); *but see Mendocino Environmental Ctr. v. Mendocino County,* 192 F.3d 1283, 1300 (9th Cir.1999)("[I]t would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity."); *Smith,* 258 F.3d at 1177 ("The focus ... is upon whether a person of ordinary firmness would be chilled, rather than whether the particular plaintiff is chilled.").

*Keenan v. Tejeda*, 290 F.3d 252, 259–60 (5th Cir. 2002).

In *Keenan v. Tejeda*, the Fifth Circuit Court of Appeals reversed the district court's finding that the plaintiff made no showing of an injury. *Id.*  There, the plaintiffs explained that after being arrested and harassed by government officials, they were afraid to travel in the area, and that he "backed off from direct involvement in helping expose unlawful practices" in a government official's office. *Id.*  The Fifth Circuit determined that these statements were sufficient to show that the plaintiffs "curtailed their protected speech activities in response to the defendants' actions". *Id.*

In the instant case, McKinney alleged that she engaged in self-censorship, which self-censorship arose from a fear of prosecution that is not imaginary or wholly speculative (as illustrated by the defendants arranging for her to be arrested just after this suit was filed in state court). Rec. Doc. 9, page 12, paragraph 36.  McKinney alleged that she also feared losing her job, which is her only means of providing for her family. Rec. Doc. 9, pages 2, 14, 18, 19.  She further alleged that she stopped speaking at most public meetings, and refrained from most discussions on social media due to a fear of additional retaliation. Rec. Doc. 9, page 15, paragraph 44; page 16, paragraph 46; pages 17-18, paragraph 51.  This fear was not imaginary, as some of the defendants actually had plaintiff charged with a crime just days after this suit was filed.  She also alleged that some of the defendants have blocked her from viewing or commenting on social media pages that they created and which are "Official Town of Killian" social media pages.

## *Count 3, Disparate Treatment in Violation of the First and Fourteenth Amendments*

The defendants argue that McKinney's "allegation that movers Sharp, Fontenot, Milton, and Erdey purportedly violated her First and Fourteenth Amendment rights in their enforcement of state and local laws" fails to state a claim.  Apparently, they misunderstand the allegations McKinney made, as well as the significance of the defendants' refusal to apply the laws similarly to those individuals who are similarly situated.

The United States Supreme Court has recognized that equal protection claims may be brought by a class of one when

> the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. See *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340 (1923); *Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty.*, 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989).

*Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 1074, 145 L. Ed. 2d 1060 (2000). In doing so, the Supreme Court explained,

> [t]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the state's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.

*Id*. In *Olech*, the plaintiff requested to be connected to the town's water supply. *Id*. The municipality demanded a 33-foot easement before it would allow the connection; however, it had only required a 15-foot easement from other property owners. *Id*. The plaintiff argued that the 33–foot easement demand was irrational and wholly arbitrary. She further argued that the municipality's demand was motivated by ill will resulting from the plaintiff's previous filing of an unrelated lawsuit against it. *Id*. She also alleged that the municipality acted with intent to deprive her of her rights or in reckless disregard of her rights. *Id*. The district court dismissed the suit for failure to state a claim under the Equal Protection Clause. The court of appeals reversed, reasoning that the plaintiff was treated differently

from those similarly situated, and that the municipality's decision was motivated by ill will towards the plaintiff. *Id.* The Supreme Court affirmed the court of appeals, finding that the plaintiff's allegations that she was treated differently from those similarly situated were sufficient to state a claim for relief under the Equal Protection Clause. *Id.*

In her Amended Complaint, McKinney alleges that the defendants treated her differently from those similarly situated, as follows:

(1) She reported physical trespasses, requested code enforcement, and sought to pursue criminal charges for trespasses. Rec. Doc. 9, page 18, paragraph 53;

(2) Sharp, Fontenot, Erdey, and Milton refused to enforce the laws and prevented Livingston Parish Code Enforcement agents from doing so, instead showing preference to the rights of their friends, the adjacent property owners. Rec. Doc. 9, page 18, paragraph 53.

(3) Sharp, Fontenot, Erdey, and Milton created a situation where the adjacent property owners felt entitled to trespass upon Cheryl's property and impede Cheryl's right of access to her property due to these Defendants directing, aiding, and/or abetting the violations. Rec. Doc. 9, page 18, paragraph 53.

(4) A neighbor's camper was blocking the only road that provides public access to the Plaintiff's property, but the defendants refused to make the neighbors

move the camper out of the road and refused to allow Livingston Parish Code Enforcement to do so. Rec. Doc. 9, page 5, paragraph 16.

(5)    McKinney's boat trailer was disabled on the same road where the neighbor's camper was disabled.  At that time, the camper had been sitting in the road for more than a year and it stayed in the road until December of 2024, when the neighbors sold their house and moved.  The boat trailer was there for a day. The defendants had McKinney's boat and trailer towed to a junk yard approximately 10 miles away, causing additional damage to the boat trailer and costing McKinney hundreds of dollars to regain possession of it. Rec. Doc. 9, page 12, paragraph 34.

(6)    The neighbors burned household garbage and other miscellaneous debris in their yard regularly from 2020 until December 2024.  The defendants knew about this, yet took no action. Rec. Doc. 9, page 12, paragraph 35.

(7)    Just after she filed this suit in state court, McKinney learned that a warrant was issued for her arrest, ostensibly due to a bonfire that burned on property adjacent to McKinney's on New Year's Eve.  McKinney does not own the property.  McKinney did not place anything on that property.  And McKinney did not start the fire.  The defendants ordered the fire department to extinguish the fire they thought was McKinney's.  To do so, they had to pass by another large bonfire.  This fire was allowed to burn, as were several other fires throughout the

Town. Rec. Doc. 9, page 12, paragraph 35-36; page 13, paragraph 36-37. During this time, Mayor Sharp and his wife, who were at another celebration, laughed as they told other attendees that McKinney was going to jail. Rec. Doc. 9, page 12, paragraph 35-36; page 13, paragraph 36-37.

These facts establish that, over and over and over again, the defendants treated McKinney differently from others similarly situated and she has alleged sufficient facts to state a claim for disparate treatment under the Equal Protection Clause of the Fourteenth Amendment.

### *Count 4 – Monell Liability*

    1.  <u>Town Liability for Chief Fontenot's Actions</u>

The defendants argue that Killian is not liable for Chief Fontenot's deprivation of McKinney's rights based upon their earlier assertions that McKinney failed to state a claim against Chief Fontenot and the other defendants. Because McKinney has already addressed these arguments above, she will not re-urged them here. See above under the heading entitled, "Count 3, Disparate Treatment in Violation of the First and Fourteenth Amendments".

    2.  <u>Municipal Liability</u>

[T]o state a claim against a municipality under [*Monell v. Department of Social Services*] and its progeny, [a plaintiff] must plead that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 395 (5th Cir. 2017).

*Gomez v. Galman*, 18 F.4th 769, 777 (5th Cir. 2021). There is no requirement that "an official policy" be written. *Id.* Rather, a municipal policy may "be an unwritten but widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Id.*

In support of her claim that Killian its policymaker (defendant Mayor Sharp), and a majority of the aldermen have such an "unwritten but widespread practice" of using any means necessary to harass her for her protected speech, McKinney alleged the following facts:

(1) She and other Killian citizens asked Mayor Sharp for copies of water testing records for the water system. Mayor Sharp refused. For more than two years, McKinney and other citizens who requested access to other public records have received no response because Mayor Sharp ordered Killian's Town Clerk, defendant Posey, to ignore all requests from the plaintiff and other citizens who have been critical of the mayor and other officials. These actions were taken in retaliation for the plaintiff and other citizens having spoken publicly in opposition to the actions taken by the mayor, the defendant aldermen, the defendant police chief, and the defendant police officers. Rec. Doc. 9, page 7-8, paragraph 21. Posey, following her boss's orders, has refused to respond to public records requests and publicly ridiculed those same citizens during conversations with uninvolved citizens during business hours. Posey's actions were in retaliation for McKinney's

and other citizens speaking critically about the mayor, the defendant aldermen, the police chief, and the police officers. Rec. Doc. 9, page 8, paragraph 21.

(2)  Defendant Ballard blocked McKinney from viewing or commenting on both of the official Town of Killian social media pages, and removed her comments from these social media pages. Rec. Doc. 9, page 8, paragraph 22.

(3)  Defendant Henry attempted to have Killian abandon the road upon which McKinney lives, and which provides the only public access to her house. Rec. Doc. 9, page 9, paragraphs 25 and 26.

(4)  During public meetings when she has attempted to exercise her right to speak on public issues, McKinney has been chastised, challenged, and denigrated by Mayor Sharp and Henry during public meetings. Rec. Doc. 9, page 10, paragraph 32.

(5)  Defendant Sharp instructed and allowed Chief Fontenot and other police officers to intimidate McKinney and other citizens during public meetings. Although only a few people attend Killian meetings, Sharp has gone to the extent of requesting a multitude of Livingston Parish Sheriff's deputies and police officers from other jurisdictions, such as the Town of Springfield to hover over and stare down citizens, including McKinney, during public meetings in an effort to intimidate them.  Sharp uses his connections with the Livingston Parish Sheriff's

Office, where his son and granddaughter work, to get these deputies to do his bidding. Rec. Doc. 9, page 10, paragraph 33.

(6)  For the past several years, the defendants have engaged in a concerted effort to harass McKinney, all of which has been based upon her public criticism of them. See Rec. Doc. 9, pages 1-15 (and throughout the Amended Complaint).

(7)  Since the time her Amended Complaint was filed, the defendants have continued their pattern of unconstitutional harassment of McKinney and others. For example, defendant Erdey made a social media post in which he specifically called out the plaintiff by name and acknowledged that he has been harassing her and her family for "[t]he last year and a half".  He then goes on to call McKinney evil and states that she is a "piece of sh*t" for exercising her constitutionally-guaranteed right to petition the government.  Defendant Henry joined Erdey in this bashing of the plaintiff.  (McKinney intends to seek leave to amend her complaint to include this allegation, as well as others that have arisen or about which she has learned since her First Amended Complaint was filed).

(8)  The defendants have refused to enforce the laws when McKinney has repeatedly asked them to, even when failure to enforce the laws created a public health hazard. Rec. Doc. 9, pages 5-7; page 12, paragraphs 34-36; page 13, paragraphs 36-38, page 14, paragraphs 39-40.

The defendants argue that McKinney did not allege that a municipal policymaker had actual or constructive knowledge of the custom or practice. Rec. Doc. 11-1, page 8.  In fact, McKinney did allege that Mayor Sharp, who is the policymaker for Killian, and a majority of Killian's aldermen were aware of the constitutional violations.  "Mayor Sharp is Killian's final policymaking authority. Under his administration, the Town and its public officials have ignored Louisiana's laws." See, Rec. Doc. 9, page 2.  "The Plaintiff brought her concerns to some of Killian's other elected officials." Rec. Doc. 9, page 6, para. 17.  "The Plaintiff attempted to educate the officials about the laws." Rec. Doc. 9, page 13, para. 38.  Sharp and two aldermen attended the meeting with McKinney's employer. Rec. Doc. 9, page 14, paragraph 40.

The defendants argue that McKinney's claim rests solely on their actions in contacting her employers "to alert them that one of their employees was publicly calling for the dissolution of one of the towns in their state".  Rec. Doc. 11-1, page 9.  This is incorrect.  Apparently, the defendants have decided to ignore the fact that dissolving the town was not discussed during the defendants' repeated phone calls to her (now) former employer.  They have also chosen to ignore that dissolving the town was not the only tattling they did during their retaliatory meeting with her current employer.  They complained about McKinney speaking at public meetings and petitioning a court for redress – rights guaranteed by our

Constitution. Rec. Doc. 9, page 14, paragraph 40. The defendants clearly find no fault in their actions, arguing that their retaliatory attempts to get McKinney fired from two separate positions are "clearly…within discretion in the exercise of a particular function". Rec. Doc. 11-1, page 10.

Surely, the persistent nature of harassment by Killian's elected and appointed officials is sufficient to show a pattern of conduct. However, even if it is not, municipal liability can attach under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for even a single decision made by a final policymaker…in regardless of whether or not the action is taken once or repeatedly. See *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986). Further, if a policymaker approves a subordinate's decision and the basis for it, such ratification would be chargeable to the municipality under *Monell*. See *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). Thus, if McKinney had only alleged one instance of retaliatory conduct, she would have stated a claim under *Monell*.

## *Claim for Punitive Damages*

The defendants argue that McKinney is not entitled to punitive damages due to their assertions that she has failed to state a claim under § 1983. However, McKinney has alleged sufficient facts to state several claims against the defendants pursuant to § 1983. Thus, her claim for punitive damages should be preserved.

## *Claim for Attorney's Fees*

The defendants argue that McKinney is not entitled to an award of attorney's fees because she is proceeding *pro se*. This is partially correct. While a *pro se* litigant may not be entitled to attorney's fees based upon a § 1983 claim, the same litigant may be entitled to attorney's fees under Louisiana's Public Records Law and/or Louisiana's Open Meetings Law. <mark>Cite</mark>. In cite case here, the court found that an attorney representing herself was entitled to attorneys fees. <mark>Cite</mark>. The court reasoned that…

McKinney is a licensed attorney practicing in the State of Louisiana. Therefore, she is entitled to attorney's fees because, if she had not had to initiate this suit against the defendants, she would be able to take on other work.

Although she may not be entitled to attorney's fees under federal law, in the event that the court dismisses her claim for those fees, McKinney requests that this Honorable Court do so without prejudice, as McKinney will likely retain legal counsel and will incur fees.

### *State Law Claims*

1. <u>Intentional Infliction of Emotional Distress</u>

To state a claim for intentional infliction of emotional distress, Louisiana law requires a plaintiff to allege (1) that the defendants' conduct was extreme and outrageous, (2) that the emotional distress suffered was severe, and (3) that the defendants desired to inflict emotional distress or knew that severe emotional

distress would be certain or substantially certain to result from their conduct.

*White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991).

> The extreme and outrageous character of the conduct may arise from an abuse by the actor of a position, or a relation with the other, which gives him actual or apparent authority over the other, or power to affect                          his                          interests.

*White*, 585 So. 2d at 1209-10 (La. 1991). Although the defendants argue that their attempts to get McKinney fired in retaliation for her critical political speech were not extreme or outrageous behavior, no regular citizen should have to deal with such conduct by elected officials who, obviously have the power to affect the citizen's interests. McKinney made sufficient allegations in her Amended Complaint to set forth a claim for negligent and/or intentional infliction of emotional distress. Rec. Doc. 9, page 17.

3. <u>Louisiana Public Records Law</u>

The defendants argue that "several of [McKinney's] attempted claims under the Louisiana public records request law also fail to state a claim". Rec. Doc. 11-1, page 12. They argue that a public records request must be submitted to the custodian of the record. Rec. Doc. 11-1, page 12. However, the defendants do not point to any request McKinney made that was not directed to the custodian of the record. Louisiana's Public Records Act ("LPRA"), in La. R.S. 44:1(A)(3),

> As used in this Chapter, the word "custodian" means the public official or head of any public body having custody or control of a

public record, or a representative specifically authorized by him to respond to requests to inspect any such public records.

Thus, any of the defendants could be a custodian of a public record, and "[p]roviding access to public records is a responsibility and duty of the appointive or elective office of a custodian and his employees." La. R.S. 44:31.

The only public records requests McKinney made that the defendants attack are the verbal requests made to all of Killian's custodians during public meetings. Rec. Doc. 11-1, page 13. While there is no jurisprudence directly on point, there is no requirement that a public records request be made in writing; a verbal request for access to a public record is sufficient to impose a duty upon a custodian to produce the record. The law only requires "a request" be made. There is no requirement that the request be in writing, per the Louisiana Attorney General.

**CONCLUSION**

McKinney has made sufficient allegations to support each of the claims for relief that the defendants have attacked. The defendants cannot impose stricter pleading requirements upon the plaintiff than the law requires, as they have attempted to do. Based upon the arguments made herein and the facts contained in her Amended Complaint, McKinney respectfully requests that this Honorable Court deny the defendants' Second Motion to Dismiss.

Respectfully submitted by:

/s/ Cheryl K. Sibley McKinney

Cheryl K. Sibley McKinney
In Proper Person
20240 Tickfaw Lane
Killian , Louisiana 70462
Phone: (985) 687-4009
Email: Cheryld1974@yahoo.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Memorandum in

Opposition to the Defendants' Motion to Dismiss has been served upon all counsel

of record, electronically or by Electronic Notice on this 27th day of March, 2025.

/s/ Cheryl K. Sibley McKinney
Cheryl K. Sibley McKinney