**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

CHERYL SIBLEY McKINNEY                      CIVIL ACTION

VERSUS                                               25-00080-SDD-RLB

RONALD L. SHARP, SR., BRENT BALLARD,
LYNDON HENDLEY, STEVEN FONTENOT,
BRIAN BINKLEY, ERNEST DRAKE III,
CATHEY POSEY, JOHN HENRY,
BLAKE ERDEY, KYLE BRENT MILTON,
in their individual and official capacities, and
the TOWN OF KILLIAN

## RULING

This matter is before the Court on the *Motion to Dismiss for Failure to State a Claim*[1] filed by Defendants, Ronald L. Sharp, Sr. ("Sharp"), Brent Ballard ("Ballard"), Lyndon Hendley ("Hendley"), Steven Fontenot ("Fontenot"), Brian Binkley ("Binkley"), Ernest Drake, III ("Drake"), Cathey Posey ("Posey"), John Henry ("Henry"), Blake Erdey ("Erdey"), Kyle Brenton Milton ("Milton"), and the Town of Killian ("Killian") (or collectively "the Defendants"). Plaintiff, Cheryl S. McKinney ("Plaintiff" or "McKinney") has filed an opposition.[2] After careful consideration of the parties' arguments and applicable law, the Court finds that the Defendants' motion shall be GRANTED in part and DENIED in part.

## I.    PROCEDURAL BACKGROUND

Plaintiff McKinney filed a Petition for declaratory judgment, damages, and injunctive relief in Louisiana state court.[3] Defendants removed to this Court, invoking

---

[1] Rec. Doc. 11.
[2] Rec. Doc. 12.
[3] Rec. Doc. 1-2, p. 10.

federal question jurisdiction.[4]  Defendants thereafter filed their first motion to dismiss.[5]

McKinney responded by filing an Amended Complaint ("the Complaint"),[6] causing the

Court to administratively terminate the Defendants' first motion to dismiss under Local

Rule 12.[7]  Defendants subsequently filed the instant motion to dismiss.[8]

## II.    FACTS ALLEGED IN THE COMPLAINT

McKinney brings this action pursuant to 42 USC § 1983 alleging violations of the

First and Fourteenth Amendments of the United States Constitution, in addition to claims

arising under the Constitution and laws of Louisiana.

The events giving rise to McKinney's claims span several years and reveal a

relationship between a resident and town officials that is both fraught and complex.

McKinney is a resident of the Town of Killian.[9]  She purchased property in Killian

and started construction on a new home in October 2020.[10]  While in the initial phases of

construction, the only roadway providing public access to her property was partially

blocked by a neighbor's camper—causing difficulty for contractors trying to deliver

materials.[11]  After contacting Livingston Parish Code Enforcement and arranging for the

neighbor to be issued a summons, McKinney alleges Sharp (the mayor of Killian)

commanded those officials "to refrain from enforcing code violations" within Killian and,

specifically, "on the road adjacent [McKinney's] future home."[12]  At a subsequent town

meeting, Sharp allegedly assigned code enforcement duties in Killian to Fontenot, the

---

[4] Rec. Doc. 1
[5] Rec. Doc. 6.
[6] Rec. Doc. 9.
[7] Rec. Doc. 10.
[8] Rec. Doc. 11.
[9] Rec. Doc. 9, ¶ 15.
[10] *Id*.
[11] *Id*. at ¶ 16.
[12] *Id*.

chief of police, whom McKinney alleges has repeatedly failed to fulfill this delegation.[13] Among these failures is an incident where, despite promising to do so for over a year, Fontenot failed to issue a summons to McKinney's neighbor whose property was laden with waste and causing sewage and other debris (including a Freon tank) to encroach onto her property.[14]

It was also during this time that McKinney started submitting public records requests on matters including water testing records,[15] town expenditures,[16] the issuance of citations by Killian police,[17] and alleged attempts by town officials to abandon the road on which she lives.[18]  McKinney alleges that most of these requests remain unanswered because Sharp "ordered the custodian of records," Posey, "to ignore any request[s] from [McKinney]."[19]  As a result of these alleged failures to respond, McKinney filed a petition for mandamus in state court.[20]

Beginning in 2022, McKinney consistently attended town meetings and "spoke[] in opposition to Sharp's policies and actions," as well as those of other Killian officials.[21] McKinney's discontent with the Town's government also led her to create a social media page entitled "Dissolution of the Town of Killian."[22]  In retaliation for these actions, McKinney alleges that she has been subject to "harassment" from several of the named Defendants for more than two years.[23]

---

[13] *Id*. at ¶ 17.
[14] *Id*. at ¶ 18.
[15] *Id*. at ¶ 21.
[16] *Id*. at ¶ 23.
[17] *Id*. at ¶ 29.
[18] *Id*. at ¶ 25.
[19] *Id*. at ¶ 21.
[20] *Id*. at ¶ 39.
[21] *Id*. at ¶ 34 (located on p. 11).
[22] *Id*. at ¶ 40.
[23] *Id*.

The first of these alleged acts occurred in 2022 and 2023, while McKinney was employed by a Louisiana state entity.[24]  She contends that Sharp, Ballard (former alderman), Henry (a Killian alderman), and Binkley (alderman), tasked Drake (the alleged municipal attorney and magistrate of Killian) with calling McKinney's employer to get her fired.[25]  The second occurred in February and March 2024, after McKinney was appointed to a new position in Louisiana government.  McKinney alleges that, around this time, Sharp, Ballard, Fontenot, and Hendley (alderman), arranged a March 4, 2024 meeting with her supervisor in Baton Rouge to complain about her comments on social media and town meetings, in addition to her filing the writ of mandamus for public records.[26]

A third instance of alleged harassment occurred in July 2024 when McKinney was confronted by Erdey, a Killian employee, about moving her disabled boat that was parked in front of her neighbor's camper trailer—which, by then, had been obstructing the roadway for more than a year.[27]  Upon McKinney's failure to do so, Erdey had a tow truck remove the boat to an impound facility.[28]  When questioned about why the neighbor's similarly parked camper had not been towed, Erdey allegedly represented that "both parties would receive a summons"—something which never materialized.[29]

The final event comprising McKinney's alleged pattern of harassment occurred between December 31, 2024, and February 3, 2025, in connection with a New Year's Eve bonfire on the property adjacent to McKinney's residence.[30]  McKinney alleges that, despite many Killian residents having bonfires that night, a local fire department arrived

---

[24] *Id.*
[25] *Id*.
[26] *Id*.
[27] *Id*. at ¶ 34 (located on p. 12).
[28] *Id.*
[29] *Id.*
[30] *Id*. at ¶¶ 36-37.

4

to extinguish the bonfire closest to McKinney's property.[31]   McKinney avers that she does not own the property upon which the bonfire was found.[32]   That said, when she asked why another neighbors' bonfire had not been extinguished,  McKinney states the fire chief informed her that he was instructed by Sharp that "under no circumstance" was she allowed to have a fire.[33]   As this unfolded, McKinney alleges Sharp was at an event "laughing and telling [others] that [McKinney] was going to jail for the new year."[34] McKinney lastly alleges that on February 3, 2025, a warrant was issued for her arrest in retaliation for the bonfire.

    With this background in mind, the Court turns to the motion to dismiss.

## III.     LAW AND ANALYSIS

### A. Rule 12(b)(6) Motion to Dismiss

When deciding a Rule 12(b)(6) motion to dismiss, the "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."[35]   The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[36]   "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[37]   In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to

---

[31] *Id*.
[32] *Id*. at ¶ 36.
[33] *Id*.
[34] *Id*.
[35] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).
[36] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)).
[37] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 540, 570 (2007)).

survive a Rule 12(b)(6) motion to dismiss.[38]  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[39]  A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[40]  However, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[41]  In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully."[42]  "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[43]  On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[44]

## B.  The Court has Subject Matter Jurisdiction over McKinney's Federal Claims

Before evaluating McKinney's claims under Rule 12(b)(6), the Court must address subject matter jurisdiction.  Defendants assert that McKinney's allegations dealing in federal law are attempts to "couch her Louisiana state law allegations as ambiguous purported violations of her rights under the First and Fourteenth Amendments."[45]  Citing to Supreme Court case law for the proposition that "even when [a] state action [contains]

---

[38] *Bell Atl. Corp. v. Twombly*, 550 U.S. at 544 (hereinafter "*Twombly*").

[39] *Id*. at 555 (internal citations and brackets omitted).

[40] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted) (hereinafter "*Iqbal*") (quoting *Twombly*, 550 U.S. at 557).

[41] *Id.* (citing *Twombly*, 550 U.S. at 556).

[42] *Id*.

[43] *Taha v. William Marsh Rice Univ*., No. 11-2060, 2012 WL 1576099, at *2 (S.D. Tex. May 3, 2012) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc*., 365 F.3d 353, 361 (5th Cir. 2004)).

[44] *Twombly*, 550 U.S. at 555 (quoting *Papassan v. Allain*, 478 U.S. 265, 286 (1986)).

[45] Rec. Doc. 11-1, p. 2.

6

a contested and substantial federal question, the exercise of federal jurisdiction is subject to a possible veto[,]" Defendants urge the Court to view McKinney's attempt as suspect.[46] In other words, Defendants challenge the Court's subject matter jurisdiction.

In the Court's view, this claim is disingenuous since the Defendants removed this action from the state court, representing in their Notice of Removal that, under 28 U.S.C. § 1331, this Court has original jurisdiction over McKinney's petition to the extent it "alleges issues governed by federal law."[47]  They further represented that, under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over McKinney's claim "brought under Louisiana state law."[48]  Nevertheless, subject matter jurisdiction is not something that can be conferred upon, or stripped from, the Court at a removing Defendants' election.[49] Accordingly, the Court examines jurisdiction *sua sponte*, even if not raised by either party.[50]

Federal courts hold federal-question jurisdiction over civil actions arising under the Constitution, laws, or treaties of the United States.[51]  For a federal court to have "arising under" jurisdiction, the plaintiff's claims must appear on the face of the complaint.[52]  This is commonly referred to as the "well-pleaded complaint" rule.[53]  On its face, McKinney's Complaint asserts causes of action under 42 U.S.C. § 1983 for violation of her First Amendment rights,[54] conspiracy to violate her First Amendment rights,[55] and disparate

---

[46] *Id*. at 2-3 (citing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313-14 (2005)).
[47] Rec. Doc. 1, p. 1-2.
[48] *Id*. at 2.
[49] *United States v. Riojas*, 139 F.4th 465, 472 (5th Cir. 2025) (citing *Ballew v. Cont'l Airlines*, 668 F.3d 777, 786 (5th Cir. 2012).
[50] *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 n.5 (5th Cir. 2005).
[51] 28 U.S.C. § 1331.
[52] *McKnight v. Dresser, Inc.*, 676 F.3d 426, 430 (5th Cir. 2012) (citations omitted).
[53] *Bernhard v. Whitney Nat'l. Bank*, 523 F.3d 546, 551 (5th Cir. 2008).
[54] Rec. Doc. 9, p. 15-16.
[55] *Id*. at p. 17.

treatment in violation of the Fourteenth Amendment.[56]  For each of these claims, "federal law creates [the] private right of action and furnishes the substantive rules of decision."[57] Accordingly, the Court properly exercises federal-question jurisdiction under § 1331.

### C. First Amendment Retaliation

#### i.     Applicable Law

The First Amendment prohibits adverse and retaliatory government action against citizens for engaging in protected speech activities.[58] To state a First Amendment retaliation claim, McKinney must sufficiently allege that (1) she was "engaged in constitutionally protected activity," (2) the town officials' actions caused her "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity," and (3) the town officials' "adverse actions were substantially motivated against her exercise of constitutionally protected conduct."[59]

#### ii.    Analysis

McKinney presents three instances of protected conduct that form the basis of her First Amendment retaliation claim. First, McKinney contends that her participation in numerous town meetings, at which she spoke "in opposition" of Mayor Sharp and other Killian officials, is protected First Amendment speech.[60]  Second, she maintains that her social media page entitled "Dissolution of the Town of Killian," which was created "to discuss the pros and cons of dissolving the Town of Killian", is likewise protected.[61] Finally, McKinney pleads that her mandamus action to enforce her public records

---

[56] *Id*. at p. 18.
[57] *Mims v. Arrow Financial Services, LLC*, 565 U.S. 368, 742 (2012).
[58] *Colson v. Grohman*, 174 F.3d 498, 508 (5th Cir. 1999).
[59] *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).
[60] Rec. Doc. 9, ¶ 39.
[61] Rec. Doc. 9, ¶¶ 40, 44.

requests, is also protected activity.[62]   Defendants  do not challenge that this speech is protected under the First Amendment.[63]   Indeed, the right to criticize government officials—whether it be at a town meeting or on social media—is unquestionably protected by the First Amendment.[64]  Likewise access to the Courts to redress grievances is also protected speech.[65]   Accordingly, the first element of McKinney's retaliation claim is readily satisfied.

The second element requires the Court to determine whether McKinney has sufficiently alleged that the Defendants' actions caused her to suffer an injury that would chill a person of ordinary firmness from continuing to criticize the actions of Killian officials.[66]  In doing so, McKinney must also allege that her own speech was curtailed, though this curtailment "need not be great in order to be actionable."[67]  McKinney relies on three courses of Defendants' conduct to meet this standard: (1) the phone calls to her employer in 2022 and 2023; (2) the March 2024 meeting with her supervisor at which several Defendants complained about her protected activities; and (3) the enforcement of laws against McKinney without probable cause, and refusal to enforce those laws against other citizens similarly situated.[68]

---

[62] *Wilson v. Thompson*, 593 F.2d 1375, 1387 (5th Cir. 1979) ("[it] is by now well established that access to the courts is protected by the First Amendment right to petition for redress of grievances").

[63] Even so, it is well established that the First Amendment was "fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *Lane v. Franks*, 134 S. Ct. 2369, 2377 (2014) (quoting *Roth v. United States*, 354 U.S. 476, 484 (1957)).

[64] *New York Times Co. v. Sullivan*, 376 U.S. 254, 269-70 (1964).

[65] Note 62, supra.

[66] *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).

[67] *Id*. at 259.

[68] Rec. Doc. 9, ¶¶ 41-48.

9

### iii.    The 2022 and 2023 Calls

McKinney contends that, in 2022 and 2023, Sharp, Ballard, Henry, and Binkley tasked Drake "with calling [McKinney's] employer in an effort to get her fired for exercising her constitutionally guaranteed rights."[69]  McKinney further avers that Sharp and Ballard personally contacted her employer multiple times in 2023 for this same purpose.[70]  But aside from claiming the calls were made during this two-year period, the Complaint provides no detail as to the substance of the alleged calls, when or how many times they occurred, or to whom the Defendants allegedly directed their retaliatory remarks.  "Naked assertion[s] devoid of further factual enhancement" that are "merely consistent with a defendant's liability" are not sufficient to survive a motion to dismiss.[71]  Even assuming all appropriate inferences in favor of McKinney, these allegations are conclusory and lack the specificity required to state a claim upon which relief can be granted.[72]

### iv.    The March 2024 Meeting

McKinney's allegation that several Defendants arranged a meeting with her Louisiana state employer for the same purpose is not so flawed.  She alleges that on March 4, 2024, after she started a new role in state government, Sharp, Ballard, Hendley, and Fontenot "scheduled a meeting with [her] new supervisor,"[73] and "travelled to Baton Rouge" to complain about her: (1) "creation of a social media page," (2) suing town officials over public records requests, and (3) "speaking at town meetings about issues of public concern."[74]  As a result, McKinney alleges that her "speech has been chilled" and

---

[69] *Id*. at ¶ 40.
[70] *Id*.
[71] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).
[72] *Powers v. Northside Indep. Sch. Dist.*, 951 F.3d 298, 305 (5th Cir. 2020) (noting that conclusory statements without factual support are insufficient to survive a motion to dismiss).
[73] Rec. Doc. 9, ¶ 40.
[74] *Id*.

"she has self-censored due to fear of further retaliation."[75]  The Defendants dispute that these allegations are sufficient to establish an actionable First Amendment injury.

Defendants argue that, although McKinney alleges certain Defendants met with her supervisor in March 2024, the absence of a resulting adverse employment action is fatal to her claim of injury.[76]  McKinney counters that nothing in the law requires her employer to have taken an adverse action; she contends it is sufficient that the Defendants' conduct caused her to curtail her protected speech activities—that is, caused them to be chilled.[77]  Lastly, Defendants contend that any allegation of chilled speech caused by McKinney's self-censorship is, simply, a "formulaic recitation of the elements of a cause of action," and therefore insufficient to survive a motion to dismiss.[78]

The Defendants' arguments are unpersuasive.  The First Amendment is violated when a government official retaliates against a citizen for engaging in protected conduct.[79]  It is also axiomatic that the government cannot act indirectly against a citizen "to produce a result which [it] could not command directly."[80]  To this point, the Fifth Circuit clarified, in *Kinney v. Weaver*, "that the government cannot harry the employer of an ordinary citizen who gave unwelcome testimony, seeking to have the employee fired in retaliation."[81]  While *Kinney* is somewhat distinguishable in that the plaintiffs, there, suffered an adverse employment action, it is nevertheless instructive.[82]  The question before the Court, here, is whether a government official's attempt to have a citizen fired

---

[75] *Id*. at ¶ 46.
[76] Rec. Doc. 11-1, p.4.
[77] Rec. Doc. 12, p. 10-12.
[78] Rec. Doc. 11-1, p. 5.
[79] *Kinney v. Weaver*, 367 F.3d 337, 358 (5th Cir. 2004).
[80] *Id*. at 358.
[81] *Id*. at 369.
[82] *Id*. at 345.

11

by a third-party employer for their protected activity, though unsuccessful, is sufficient to chill a person of ordinary firmness from continuing their conduct. The Court concludes that, under *Kinney*, the answer is yes.[83] It is sufficient to show that a government actor lent their official title, time, and effort—in essence, the imprimatur of their office—to the cause of retaliating against a citizen.[84] Because McKinney has alleged that Sharp, Ballard, Hendley, and Fontenot, did precisely this, the Court finds she has pleaded state conduct that is sufficient to chill a person of ordinary firmness from continuing to engage in protected activity.[85]

Despite the Defendants' argument to the contrary, *Colson v. Grohman*[86] does not command a different result. It is one thing to subject a citizen to "public criticism, an investigation (or attempted investigation), and false accusations"—which the Fifth Circuit has determined are not substantial enough "injuries" to chill a person of ordinary firmness.[87] It is something else altogether to lobby a citizen's employer to terminate their employment because they engaged in protected activity. While not binding, this Court finds persuasive the Sixth Circuit's determination in *Fritz v. Charter Township of Comstock* that "a credible threat to the nature and existence of one's ongoing employment is of a similar character to the other recognized forms of adverse actions [under the First Amendment]—termination, refusal to hire, etc.—even if perpetrated by a third party who

---

[83] See *Hansard v. Zamora*, No. 23-41, 2024 WL 3682240 at *6 (W.D. Tex. Aug. 5, 2024) (concluding the same).

[84] *Bevill v. Fletcher*, 26 F.4th 270, 282-83 (5th Cir. 2022) (reading *Kinney* to proscribe a government official "exerting their power or influence over a third-party employer to cause the plaintiff to be terminated for exercising [their] First Amendment rights").

[85] See *Fritz v. Charter Tp. of Comstock*, 592 F.3d 718, 726 (6th Cir. 2010) (recognizing that "a person of ordinary firmness would be deterred from engaging in protected conduct, if as a result, a public official encouraged her employer to terminate the person's contract or to have her change her behavior").

[86] *Colson v. Grohman*, 174 F.3d 498, 512 (5th Cir. 1999).

[87] *Id.*

is not the employer."[88]  It follows that when a government actor seeks to threaten a citizen's economic livelihood because they find their protected conduct disagreeable, the citizen is made to suffer more than just the concomitant stress that accompanies criticism, unfounded accusations, and even defending oneself from an investigation.  Such conduct is not too "trivial" or "minor" to constitute an injury under the First Amendment.[89]

Also unavailing is the Defendants' suggestion that, because McKinney's speech was chilled by way of self-censorship, her allegations are simply a "formulaic recitation of the elements of a cause of action."[90]  In the First Amendment context, "self-censorship can give rise to a cognizable constitutional injury."[91]  Even so, the Defendants mistake McKinney's self-censorship to be the sine qua non of her retaliation claim.  Retaliation claims also require that the plaintiff's own speech have been curtailed in some way.[92] McKinney satisfies this requirement and, therefore, the second element of her retaliation claim, where she alleges that, because of the Defendants' actions, she backed off from her criticism of local officials and discussions regarding town dissolution.[93]

Regarding the third element, Defendants argue that the actions underlying McKinney's retaliation claim were not substantially motivated against her constitutionally protected activity.  More specifically, Defendants point to the directive from *Nieves v. Bartlett*[94] that a plaintiff must establish "but-for" causation between the government actor's retaliatory animus and the plaintiffs' subsequent injury.[95]  Defendants contend that

---

[88] *Fritz*, 592 F.3d at 728.

[89] *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).

[90] Rec. Doc. 11-1, p. 5.

[91] *Zimmerman v. City of Austin*, 881 F.3d 378, 389 (5th Cir. 2018).

[92] *Keenan*, 290 F.3d at 259-60 (though "th[is] effect on freedom may be small").

[93] *Id.* at 260 (finding plaintiffs sufficiently pleaded curtailment of their protected activities when they "backed off from direct involvement in helping expose unlawful practices" in response to the defendant's actions).

[94] 587 U.S. 391, 398-99 (2019).

[95] Rec. Doc. 11-1, p. 4.

alerting McKinney's government supervisors to her protected activity, even if colored by some degree of bad motive, is not actionable to the extent "it was an action that in all likelihood would have been taken anyway," regardless of an improper purpose.[96]   In support of this position, Defendants characterize McKinney's speech as "a concerted effort to have the Town of Killian dissolved," of which the state needed to be apprised.[97]

But the mere assertion of a nonretaliatory motive is not an escape hatch for liability at this stage of the proceedings.  The Court need not determine the exact reason for the Defendants' decision to drive to Baton Rouge and meet with McKinney's supervisor on March 4, 2024.  Rather, the Court need only find that the factual allegations in the Complaint, and the reasonable inferences drawn therefrom, create a plausible case for a retaliatory motive and but-for causation. Taking all well-pleaded allegations as true, the Court concludes that McKinney has alleged a sequence of events and specific facts from which a reasonable inference can be drawn that the Defendants (1) harbored a retaliatory motive against McKinney's exercise of First Amendment activities and, (2) but for that motive, would not have undertaken the alleged adverse actions.[98]

Importantly, it is alleged that Defendants' complaints at the March 2024 meeting extended beyond McKinney's activity on social media (as would support their stated nonretaliatory motive regarding town dissolution) to include their dissatisfaction with her comments at town meetings and mandamus litigation against town officials.  Even so, Defendants cite no authority (let alone local policy) that requires state officials to be notified each time a state employee calls for dissolution of the town in which they reside.

---

[96] *Id.*
[97] *Id.*
[98] *Brady v. Houston Independent School Dist.*, 113 F.3d 1419, 1424 (5th Cir. 1997) (recognizing that plaintiffs may rely upon "a chronology of events from which retaliation may plausibly be inferred").

14

On these facts, the Court cannot conclude that McKinney's retaliation claim fails to plead the necessary causation between the Defendants' retaliatory motive and her constitutional injury. McKinney's allegations are therefore sufficient to satisfy the third element of her First Amendment retaliation claim against those Defendants who arranged and attended the meeting with her supervisor on March 4, 2024.

     v.      <u>Retaliatory enforcement of laws</u>

McKinney next contends that Sharp, Fontenot, Erdey, and Milton, engaged in retaliatory acts in violation of the First Amendment when they enforced laws against her without probable cause, and refused to enforce those same laws against other similarly situated citizens.[99] A fair reading of McKinney's Complaint identifies two instances of conduct that fall within this description: (1) the July 2024 towing of her disabled boat by Erdey,[100] and (2) the December 31 bonfire incident.

The Court interprets these allegations to set forth a retaliatory enforcement claim under the First Amendment. "The First Amendment prohibits government officials from subjecting an individual to retaliatory actions…for speaking out."[101] While retaliation claims based on enforcement actions often arise in the context of arrests and/or prosecutions, the First Amendment's application is not so limited that the towing of one's vehicle and extinguishing of a bonfire cannot qualify as retaliatory enforcement actions.[102] Given the public-safety element inherent in such acts, the Court recognizes—as it must— the Fifth Circuit's directive that "the objectives of law enforcement [typically] take primacy

---

[99] Rec. Doc. 9, ¶ 48.
[100] *Id*. at ¶ 34.
[101] *Hartman v. Moore*, 547 U.S. 250, 256 (2006).
[102] *Izen v. Catalina*, 398 F.3d 363, 367 n.5 (5th Cir. 2005) ("[a]ny form of official retaliation for exercising one's freedom of speech, including…threatened prosecution bad faith investigation, and legal harassment …constitutes an infringement on that freedom").

15

over the citizen's right to avoid retaliation."[103]  In such circumstances, a plaintiff can still satisfy the three-part First Amendment retaliation framework inquiry, but must also show an absence of probable cause to establish "but for" causation.[104]  That said, there is a "narrow qualification" to this rule where the plaintiff pleads objective evidence that similarly situated individuals who did not engage in the protected activities at issue were not subject to the complained of enforcement action, despite the existence of probable cause to enforce the law against them.[105]

The Court first considers the towing of McKinney's boat.  While these allegations are disturbing, McKinney does not plead sufficient facts from which the Court can reasonably infer that Erdey's conduct was substantially motivated (if at all) by McKinney's protected activities.  Aside from his above-noted involvement in the boat's towing, the only other mention of Erdey in the Complaint arises in connection with a September 10, 2024 public records request "directed to Posey, Fontenot, Erdey, Milton, and any other public official having responsive public records."[106]  While the Complaint does note, in conclusory fashion, that "Fontenot, Erdey, and Milton refused to make the [neighbor] move their camper,"[107] this fact does not prompt an inference that Erdey's trip to McKinney's residence in July 2024 was made for an improper retaliatory purpose, or at the direction of others who may have harbored such retaliatory motives.  For that reason, the facts alleged are insufficient to sustain a First Amendment retaliation claim against any of those named Defendants on this basis.

---

[103] *Davidson v. City of Stafford, Texas*, 848 F.3d 384, 391 (5th Cir. 2017).
[104] See *Nieves v. Bartlett*, 587 U.S. 391, 404 (2019) ("[a]bsent…a showing [of no probable cause], a retaliatory arrest claim fails").
[105] *Id.* at 407.
[106] Rec. Doc., ¶ 24.
[107] *Id*. at ¶34 (located on p. 12).

16

As to the bonfire incident, the Court finds McKinney's allegations sufficient to assert a colorable claim of First Amendment retaliation.  Notwithstanding the fact that the bonfire was on a property adjacent McKinney's residence, the alleged sequence of official conduct constitutes an enforcement action sufficient to chill the speech of a person of ordinary firmness.  Not only do the allegations show that McKinney was informed by the fire chief that, pursuant to a directive from Sharp, she was unable to engage in an activity that other residents of Killian could freely enjoy (and openly did so), she was shortly thereafter subject to an arrest warrant for that very same conduct.  To the extent "the Supreme Court has often [recognized] that a realistic threat of arrest is enough to chill First Amendment rights[,]"[108] an arrest warrant certainly qualifies.

The Court also finds that McKinney sufficiently pleads that the adverse actions were substantially motivated against her exercise of First Amendment rights.  Even assuming probable cause existed to extinguish the fire and pursue criminal charges for McKinney's conduct—which she disputes—the Complaint contains allegations that "otherwise similarly situated individuals not engaged in the same sort of protected speech had not been"[109] so targeted by official action.  McKinney further alleges that, as the bonfire was being extinguished, Sharp was at an event "laughing and telling [his] great-granddaughter that [McKinney] was going to jail for the new year,"[110]  which allows the Court to reasonably infer that the bonfire-related enforcement actions were likely devoid of a legitimate justification and, instead, inspired by Sharp's distaste for McKinney's protected activities.  Such an inference is likewise made plausible by the chronology of

---

[108] *Brown v. Jones Cty. Junior Coll.*, 463 F. Supp. 3d 742, 761 (S.D. Miss. 2020) (citing *Hodgkins ex rel. Hodgkins v. Peterson,* 355 F.3d 1048, 1056 (7th Cir. 2004)).
[109] *Nieves*, 587 U.S. at 407.
[110] Rec. Doc. 9, ¶ 36.

17

events alleged in the Complaint and the fact that, less than a year prior, in March 2024, Sharp allegedly unsuccessfully lobbied for McKinney's termination from public employment based on that same protected conduct.[111]

For the foregoing reasons, the motion to dismiss McKinney's First Amendment retaliation claim is DENIED as to Sharp, Ballard, Fontenot and Hendley. As to all other Defendants, the motion to dismiss is GRANTED.

### D. McKinney Fails to State a 42 U.S.C. § 1983 Civil Conspiracy Claim

The Court now considers McKinney's allegation that, under 42 U.S.C. § 1983, Sharp, Ballard, Fontenot, Drake, and Hendley, engaged in a conspiracy to chill her speech in violation of the First Amendment to the United States Constitution and Article 1, Section 7 of the Louisiana Constitution.[112]

"In order to prevail on a [§] 1983 conspiracy claim, a plaintiff must establish (1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy."[113] Regarding the first element: "To establish a cause of action based on conspiracy a plaintiff must show that the defendants agreed to commit an illegal act."[114] "Mere conclusory allegations of conspiracy cannot, absent reference to material facts, survive a motion to dismiss."[115] "[M]ore than a

---

[111] *Brady v. Houston Indep. Sch. Dist.*, 113 F.3d 1419, 1424 (5th Cir. 1997) (to establish a First Amendment retaliation claim, a plaintiff may "rely upon 'a chronology of events from which retaliation may plausibly be inferred'").

[112] Rec. Doc. 9, ¶¶ 49-51.

[113] *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990); *see also Jabary v. City of Allen*, 547 F. Appx 600, 610 (5th Cir. 2013) ("To prove a conspiracy under § 1983, a plaintiff must allege facts that indicate (1) there was an agreement among individuals to commit a deprivation, and (2) that an actual deprivation occurred." (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir.1994)).

[114] *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982) (Rubin, J.) (citations omitted).

[115] *Id.* (citing *Slotnick v. Staviskey*, 560 F.2d 31, 33 (1st Cir. 1977)).

18

blanket of accusation is necessary to support a § 1983 claim."[116] Plaintiff must make "specific allegation[s] of fact tending to show a prior agreement has been made."[117]

In support of her conspiracy claim, McKinney alleges, upon information and belief, that Ballard, Drake, Sharp, Hendley, and Fontenot, "entered into an agreement to harass [McKinney] and get her fired from her jobs."[118]  She further alleges that,  by calling her supervisors at one job and meeting with her supervisor at another, the Defendants took "steps…in furtherance of their conspiratorial goal, which resulted in [McKinney's] speech being chilled, as she refrained from expressing her political opinions publicly thereafter."[119]  As previously noted, however, the Court finds only the act of meeting with McKinney's employer was sufficiently pleaded to constitute retaliation in violation of the First Amendment.  For this reason, the Court can only consider that conduct for purposes of the conspiracy claim—thus, only Ballard, Sharp, Hendley, and Fontenot are implicated.

In light of this, and despite no party addressing the issue, it is glaring to the Court that there can be no conspiracy, for such a finding is barred by the intra-corporate conspiracy doctrine.  It is a long-standing rule in the Fifth Circuit that a "corporation cannot conspire with itself any more than a private individual can, and… that the acts of the agent are the acts of the corporation."[120]  These principles, applicable to  § 1983 claims,[121] also extend to municipalities like the Town of Killian.[122]   The result: the intra-corporate

---

[116] *Id.* (citations omitted).
[117] *See id*. at 1023-24.
[118] Rec. Doc. 9., ¶ 51.
[119] *Id*.
[120] *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994) (applying the intra-corporate conspiracy doctrine to a § 1985 conspiracy claims against a school board and its members) (internal citations omitted).
[121] *Burns v. Harris v. County Bail Bond Bd.*, 139 F.3d 513, 520 (5th Cir. 1998); *Trombley v. O'Neil*, 929 F. Supp. 2d 81, 107 (N.D.N.Y. 2013) ("the intra-corporate conspiracy doctrine…applies to…42 U.S.C. [§] 1983).
[122]  See *Swilley v. City of Houston*, 457 F. Appx. 400, 404 (5th Cir. 2012) ("The City…is a single legal entity and, as a matter of law, its employees cannot conspire among themselves.").

19

conspiracy doctrine precludes plaintiffs from bringing conspiracy claims against multiple defendants employed by the same governmental entity, for an agency and its employees are "a single legal entity which is incapable of conspiring with itself."[123]   The allegations of McKinney's Complaint confirm that Sharp, Ballard, Hendley, and Fontenot are all "officers of the Town of Killian."[124]   Accordingly, they are "incapable of" conspiring among themselves.[125]  This is true even if, as here, the conspiracy is alleged against the town officials in both their individual and official capacities.[126]

Accordingly, the Defendant's motion to dismiss McKinney's § 1983 conspiracy claim is GRANTED.

### E. McKinney Fails to State a Claim under the Fourteenth Amendment

Defendants argue that McKinney fails to state a claim for relief under a theory of disparate treatment in violation of the Fourteenth Amendment.  McKinney alleges that, despite repeated reports, Sharp, Fontenot, Erdey and Milton, "failed to protect [her] property from intrusion by adjacent property owners," and thereby "created a situation where the adjacent property owners felt entitled to trespass upon [McKinney's] property and impede [her] right of access."[127]  She further alleges that, based on the facts laid out in the Complaint, she has been subject to "an orchestrated campaign of official harassment over more than [two] years"—which she labels as "Category Three discrimination"—and thereby "is a 'class of one' under the law."[128]

---

[123] *Thornton v. Merchant*, 526 Fed. Appx. 385, 388 (5th Cir. 2013) (per curiam) (citing *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998)).
[124] Rec. Doc. 9, ¶ 45.
[125] *Thornton*, 526 Fed. Appx. at 388.
[126]  See, e.g., *Collins v. Bauer*, No. 311-887, 2012 WL 443010, at *8 (N.D. Tex. Jan. 23, 2012) (citing *Reynosa v. Wood*, 134 F.3d 369, 369 (5th Cir. 1997)).
[127] Rec. Doc. 9, ¶ 53.
[128] *Id*.

Despite invoking this classification, McKinney's Complaint is vague as to what type of equal protection claim she asserts.  Understandably, Defendants' do not address McKinney's "class of one" theory; instead, they direct the Court's attention to several Supreme Court cases that stand for the proposition that a failure to strictly enforce the law against wrongdoers does not, by itself, constitute a violation of the Due Process Clause.[129]  Indeed, the Due Process Clause confers "no affirmative right to governmental aid, even where such aid may be necessary to secure…property interests…."[130]  But a fair reading of the Complaint suggests McKinney's claims are better analyzed under Equal Protection principles which proscribe the disparate treatment of similarly situated individuals where "there is no rational basis for the difference in treatment."[131]

Applied here, the Court finds that McKinney's class-of-one theory must fail.  If "the challenged government action does not appear to classify or distinguish between two or more relevant persons or groups, then the action—even if irrational—does not deny them equal protection of the laws."[132]  McKinney's Complaint does not allege that town officials only pursued trespass and code enforcement requests when made by other residents. Nor does McKinney allege that she was subject to a trespass-related sanction to which other residents were not similarly made subject.  Accordingly, McKinney has not stated a claim for violation of the Equal Protection Clause based on the conduct of town officials related to trespass enforcement.

---

[129]  Rec. Doc. 11-1, p.6 (citing *DeShaney v. Winnebago Cty. Dep't of Social Servs.*, 489 U.S. 189, 195-96 (1989)).
[130] *DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 197 (1989).
[131] *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Whiting v. Univ. of S. Miss.*, 451 F.3d 339, 348 (5th Cir. 2006).
[132] *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997)

To the extent McKinney's alleged "orchestrated campaign of official harassment" can be read to include police actions alleged elsewhere in the Complaint—such as the towing of her boat and the December 31 bonfire—that conduct is alleged to have been done "in retaliation for [McKinney's] protected speech."[133]  It is clear, however, that class-of-one claims under the Equal Protection Clause are properly premised on "differential treatment…[and] not…the infringement of a fundamental right."[134]  To the extent that the First Amendment right to free speech is "fundamental" for purposes of the Fourteenth Amendment,[135] a class-of-one theory under the Equal Protection Clause is not the proper mechanism by which it is to be enforced.[136]

For that reason, the Defendants' motion to dismiss McKinney's § 1983 claim arising from disparate treatment in violation of the Fourteenth Amendment is GRANTED.

## F.  McKinney Fails to State a Claim for *Monell* Liability

McKinney also asserts *Monell* liability against the Town of Killian based on her First Amendment retaliation claim.

*Monell* liability consists of three elements: (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose moving force is the policy or custom.[137] The "violation of constitutional rights" must thereby be "directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional

---

[133] Rec. Doc. 9, ¶ 48 (located on p. 16-17).

[134] *Woods v. Collier*, 836 F.3d 534, 539 (5th Cir. 2016); *Poupart v. Department of Public Safety*, No. 24-931, 2025 WL 1749985 at *3 (M.D. La. May 28, 2025).

[135] *Burson v. Freeman*, 504 U.S. 191, 196 (1992) (quoting *Thornhill v. Alabama*, 310 U.S. 88, 95 (1940) ("The freedom of speech…which [is] secured by the First Amendment…[is] among the fundamental personal rights secured to all persons by the Fourteenth Amendment against abridgement by a State")).

[136] See *Guardian News, Inc. v. Idoni*, No. 08-10064, 2011 WL 13383231 at *7 (S.D.N.Y. Jun. 20, 2011) ("a claim that one has been selectively mistreated on an impermissible basis, such as the exercise of one's First Amendment rights, is thus not a class-of-one equal protection claim, but rather a selective treatment claim")).

[137] *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

actions by municipal employees will almost never trigger liability."[138]   In other words, the municipality must be "actually responsible"[139] for the constitutional violation at issue and may not be held vicariously liable for the unconstitutional acts of its employees.[140]

McKinney attempts to satisfy this standard by alleging Sharp—as the ultimate policymaker for Killian—"has a custom, pattern, practice, and/or procedure of violating people's rights," as illustrated by, among other things, "attempting to get [McKinney] fired for her protected speech."[141]   Relying on *Malone v. City of Fort Worth*,[142]   Defendants counter that McKinney's allegations fail to show a "pattern of similar violations of federal rights," as is generally required when a plaintiff seeks to attach *Monell* liability on the basis of a policy/custom that is deliberately indifferent to the known or obvious consequence that it will result in the violation of federal rights.[143]   They further contend that even under the Supreme Court's "single decision" exception from *Pembaur v. Cincinnati*,[144] alerting McKinney's state supervisors that their employee was calling for Killian's dissolution was a discretionary act that "without more" does not give rise to municipal liability.[145]

With respect to *Monell*'s first element, the Court finds McKinney has failed to plead sufficient facts to show Sharp is a policymaker with final policymaking authority

---

[138] *Id*.

[139] *Burge v. Parish of St. Tammany*, 187 F.3d 452, 471 (5th Cir. 1999).

[140] *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

[141] Rec. Doc. 9, ¶ 57.  McKinney also points to Sharp's "blatant disregard for Louisiana's Public Records and Open Meetings laws" and "ordering and/or ratifying his police officers' refusal to implement the laws equally towards all citizens." *Id*.  The Court finds these statements "too generic and conclusory to be entitled to a presumption of truthfulness." *Badie v. City of New Orleans*, No. 11-2991, 2013 WL 5175648 (E.D. La. Sep. 12, 2013) (dismissing *Monell* claims for this reason).  Even so, the Complaint does not refer to the Public Records or Open Meetings law violations as the basis for any of the federal causes of action that could serve as a predicate for purposes of *Monell* liability.  Nor does McKinney identify a single instance where Sharp instructed and/or ratified any police officer's conduct, let alone that which applies the law unequally.

[142] 297 F. Supp. 3d 645 (N.D. Tex. 2018).

[143] Rec. Doc. 11-1., pp. 8-9.

[144] 475 U.S. 469 (1986).

[145] Rec. Doc. 11-1, pp. 10-11.

"concerning the action alleged to have caused the particular constitutional violation."[146] The Complaint cites no state or local law designating Sharp as the official responsible for notifying state officials any time a state-employee discusses dissolving their town's government on social media.[147] Instead she alleges, in conclusory fashion and without factual underpinning, that he is the "ultimate policymaker for the town."[148] A bare legal conclusion, like this, cannot survive a motion to dismiss.

Even so, the allegations as pleaded suggest Sharp, along with several other town official Defendants, decided to arrange and attend a meeting with McKinney's supervisors for a constitutionally improper purpose. Importantly, and to the extent the Defendants' decision can be considered a policy function, the ability to make a decision does not equate to the ability to make a final policy.[149] The Fifth Circuit has long distinguished between final decision-making authority and final policymaking authority.[150] While it is clear that Sharp exercised discretion in attending the March 4 meeting, McKinney does not plausibly allege that he had final policymaking authority for the Town in doing so.

Even if that were the case, the factual allegations in the Complaint do not satisfy the second element of *Monell* requiring an official policy. The Fifth Circuit has identified three ways that this element can be satisfied: (1) showing a written policy;[151] (2) showing a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy;[152] and, in rare circumstances, (3) showing a single

---

[146] *McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 785 (1997) (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)).

[147] *Burge v. Parish of St. Tammany*, 187 F.3d 452, 468 (5th Cir. 1999).

[148] Rec. Doc. 9, ¶ 55.

[149] *Bolton v. City of Dallas*, 541 F.3d 545, 549 (5th Cir. 2008) (per curiam).

[150] *Id.*

[151] *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214-15 (5th Cir. 2019).

[152] *Id.* at 215.

24

decision where the official or entity possessing final policymaking authority for an action performs the specific act that forms the basis of the § 1983 claims.[153]  In the present case, it is clear that only the third option is possible.[154]

A "single unconstitutional action…may be sufficient in <u>rare</u> circumstances to impose municipal liability under *Monell*."[155]  This requires "a government decision-maker possessing final authority with respect to an area of government responsibility [to] order[] or directly participate[] in the action that causes the alleged violation of the plaintiff's rights."[156]  To be sure, a single instance of First Amendment retaliation is not categorically excepted from this rule.[157]  Nevertheless, McKinney has failed to plausibly allege that Sharp has final policymaking authority for the conduct at issue (or the area of governance it implicates).  Even then, the Fifth Circuit has only applied single violation *Monell* liability in "extreme circumstances."[158]  Indeed, that court "has considered single violation liability several times, and, with only one exception in some (40) years since *Monell*,  has consistently rejected application of the single incident exception."[159]  Instructively, the sole exception, *Brown v. Bryan County, Oklahoma*,[160] involved a sheriff's failure to train a deputy known to have an "exuberant and reckless background" on and off the job, such that the sheriff was on clear notice that placing him on duty with "no training" and "no

---

[153] *Id*.

[154] McKinney ostensibly pleads *Monell* liability under both 'custom' and 'single decision' theories.

[155] *Howell v. Town of Ball*, 827 F.3d 515, 527 (5th Cir. 2016) (emphasis added).

[156] *Andrade v. City of San Antonio*, 143 F. Supp. 2d 699, 724 (W.D. Tex. 2001) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)).

[157] *Lott v. Forrest County, Miss.*, No. 214-131, 2015 WL 7015315, at *10 (S.D. Miss. Nov. 10, 2025).

[158] *Blanchard-Daigle v. Geers*, 802 Fed. Appx. 113, 117 (5th Cir. 2020); *Cozzo v. Tangipahoa Parish Council-President Government*, 279 F.3d 273, 288 (5th Cir. 2002) ("[T]his court has often rejected application of the single incident exception.").

[159] *Khansari v. City of Houston*, No. 13-2722, 2015 WL 6550832, at *16 (S.D. Tex. Oct. 28, 2015) (quoting *Thompson v. Connick*, 578 F.3d 293, 299 (5th Cir. 2009), reversed on other grounds, *Connick v. Thompson*, 563 U.S. 51 (2011)).

[160] 219 F.3d 450 (5th Cir. 2000).

25

supervision" could lead to an excessive force incident.[161]   Accordingly, the Court cannot conclude that Sharp's conduct, although concerning, fits within the narrow circumstances under which courts in the Fifth Circuit have applied single-incident municipal liability.[162]

Accordingly, Killian's motion to dismiss McKinney's *Monell* claim is GRANTED.

**G. The Court declines to exercise supplemental jurisdiction over two of McKinney's three state law claims**

McKinney also pleads several claims that arise under the Louisiana Constitution and state law.  Specifically, she alleges a conspiracy to chill plaintiff's speech in violation of Article I, Section 7 of the Louisiana Constitution,[163] violations of the Louisiana Public Records and Open Meetings Law,[164] and a state law tort claim for the intentional (or negligent) infliction of emotional distress.[165]   To determine whether the Court may exercise supplemental jurisdiction over any of these claims, under 28 U.S.C. § 1367, it must first be shown that "the supplement claims are so related to the original claims" for which the Court has original jurisdiction under § 1331, "that they form part of the same case or controversy[;] in other words, that they derive from a common nucleus of operative fact."[166]   Whether it is appropriate to exercise supplemental jurisdiction requires a fact

---

[161] *Id*. at 462-63.

[162] Courts generally require extreme factual situations such that "[s]ingle violations create liability in only the most egregious cases." *Thompson v. McGehee*, 761 F. Supp. 3d 937, 945 (N.D. Tex. 2025); *Waller v. City of Fort Worth, Tex.*, 515 F. Supp. 3d 577, 589 (N.D. Tex. 2021) (finding the actions at issue were "comparable to shooting a fleeing suspect in the back, and… [therefore] not extreme enough").

[163] Rec. Doc. 9, p. 17.

[164] Rec. Doc. 9, pp. 19-20.

[165] Rec. Doc. 9, ¶ 49.

[166] *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008).

specific case-by-case inquiry,[167] in which the relatedness of the various claims in time, space, origin, or motivation should be considered.[168]

As to McKinney's claim under Louisiana's Public Records and Open Meetings laws, the Court concludes that the conduct alleged is not "so related" to her federal claims that they "form part of the same case or controversy."[169]  A fair reading of the pleaded facts reveals that none of McKinney's federal claims look to impose liability for the town officials' conduct during town meetings or in responding to public records requests.[170] Instead, it is the protected activities McKinney engaged in because of her discontent with the Defendants' handling of these matters that is alleged to have given rise to the retaliatory acts, conspiracy, and disparate treatment in violation of federal law.  The fact that a plaintiff alleges First Amendment retaliation in response to protected speech does not, by itself, confer federal jurisdiction over state law claims arising from the controversy that initially prompted the plaintiff's speech.  Because McKinney's claims under federal law and Louisiana's Public Records and Open Meetings laws derive from different origins, the Court declines to exercise supplemental jurisdiction over the latter.[171]

---

[167] *Whatley v. Young Women's Christian Ass'n of Northwest Louisiana, Inc.*, No. 06-423, 2006 WL 1453043, at *3 (W.D. La. May 18, 2006).

[168] *Fed. Ins. Co. v. C.D. Henderson Inc.*, No. 07-982, 2008 WL 11334958, at *3 (W.D. Tex. Oct. 31, 2008) (quotation marks and citation omitted).

[169] 28 U.S.C. § 1367(a).

[170] The allegations in McKinney's Complaint present only two candidates to support her Louisiana Open Meetings law violation.  That is, on February 14, 2024, the Defendants held a public meeting but had only posted the Notice therefor on February 13—which was Mardi Gras Day, a state holiday.  Rec. Doc. 9, ¶ 30. McKinney also alleges that when she attempted to participate and speak on public issues, she was "chastised, challenged, and denigrated by Mayor Sharp and Henry."  *Id*., ¶ 31.  Both instances are distinct from the conduct McKinney sets forth in support federal law claims.  Even if the Court were to couch the latter allegation into McKinney's retaliation or disparate treatment causes of action, the attempt is defeated by McKinney's assertion that "Sharp instructs and allows his appointed police chief and other police officers to intimidate [McKinney] and other citizens in attendance."  *Id*., ¶ 33. On that showing, the Court would be unable to find that McKinney was singled out for her protected speech or some other impermissible rationale

[171] *Mount v. Louisiana State University Health Sciences Ctr.*, No. 25-1377, 2025 WL 3684247, at * 5 (E.D. La. Dec. 19, 2025) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) (recognizing that "*each separate claim* 'must derive from a common nucleus of operative fact[s]' and be such that a plaintiff 'would ordinarily be expected to try them in one judicial proceeding'") (emphasis added)).

27

The Court also declines to exercise its supplemental jurisdiction over McKinney's claim entitled "Conspiracy to Chill Plaintiff's Speech in Violation of… Article 1, Section 7 of the Louisiana Constitution."[172]  The determination of whether to exercise jurisdiction over a state law claim must be made on a case-by-case basis, keeping in mind and balancing such considerations as judicial economy, convenience, fairness, and comity (the *Cohill* factors).[173]  The final decision, however, is made in the court's discretion.[174]

Resolving McKinney's conspiracy claim under the Louisiana Constitution would require this Court to resolve a complex issue of state law—and potentially an issue of first impression.  The parties do not cite, and the Court did not locate, any authority on whether conspiracy claims are actionable in this context.  On this basis, the Court declines supplemental jurisdiction under 28 U.S.C. § 1367 (C).[175]  The *Cohill* factors, too, weigh in favor of declining jurisdiction, particularly those of judicial comity and economy.  As courts of limited jurisdiction, federal courts are "not as well equipped for determinations of state law as are state courts."[176]  The Court is of the opinion that this principle applies with added force when, as here, the state law claim would involve the interpretation and possible expansion of rights under a State's own constitution.[177]  The Court's decision is further supported by its denial of McKinney's federal conspiracy claim.[178]

---

[172] Rec. Doc. 9, p. 17.

[173] *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349-50 (1988).

[174] *Wilson v. Tregre*, 787 F.3d 322, 326 (5th Cir. 2015).

[175] *Sevin v. Parish of Jefferson*, 632 F. Supp. 2d 586, 593-94 (E.D. La. 2008) (declining exercise of supplemental jurisdiction where relevant constitutional provision "had been interpreted only once by the Louisiana Supreme Court…and its meaning subject of confusion and debate").

[176] *Enochs v. Lampasas County*, 641 F.3d 155, 160 (5th Cir. 2011).

[177] *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 590 n.12 (5th Cir. 1992) ("comity and federalism are sometimes better served" by avoiding "unnecessary determinations of state law").

[178] Alternatively, McKinney's Complaint lacks factual support and a legal basis to sustain her state constitutional conspiracy claim.  McKinney states, in conclusory fashion, "[t]he Louisiana Constitution…also guarantees [her] the right to freedom of expression."  Rec. Doc. 9, ¶ 48.

28

Accordingly, McKinney's claims arising under the Louisiana Constitution and Louisiana's Public Records and Open Meetings laws are REMANDED.[179]

The Court lastly considers McKinney's allegation that the March 2024 meeting with her employer supports a claim for the intentional (or negligent) infliction of emotional distress. Because this claim inherently derives from "a common nucleus of operative fact" with McKinney's federal constitutional claims, namely for First Amendment retaliation, the Court will entertain supplemental jurisdiction under 28 U.S.C. § 1367.

## H. McKinney Fails to State a Claim for Intentional and/or Negligent Infliction of Emotional Distress

In *White v. Monsanto*, the Louisiana Supreme Court explained that for a claim of intentional infliction of emotional distress to be actionable, a plaintiff must establish "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that [it] would be certain or substantially certain to result from his conduct."[180] The defendant's conduct "must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."[181] McKinney's Complaint identifies only the March 2024 meeting as "outrageous behavior amounting to the intentional and/or negligent infliction of emotion distress."[182] Defendants, on the other hand, contend this falls "far below" the standard necessary to sustain the cause of action.

---

[179] *Enochs*, 641 F.3d at 160; *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1181 (5th Cir. 1987) ("Remand…instead of dismissal, is the appropriate action [for] lack of subject matter jurisdiction.").
[180] 585 So.2d 1205, 1209 (La. 1991).
[181] *Glenn v. Boy Scouts of America*, 977 F. Supp. 786, 789 (W.D. La. 1997).
[182] Rec. Doc. 9, ¶ 49.

29

The Court need not resolve this dispute concerning the first element. Even drawing all inferences in McKinney's favor, the facts alleged are insufficient for two reasons. First, the Court cannot find any allegation that, by organizing the March 2024 meeting, the involved Defendants "desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from their conduct." Second, and applicable to both the intentional and negligent infliction theories, McKinney does not present facts showing that her emotional distress was severe. "It is not sufficient to assert severe emotional distress in a conclusory fashion without any facts supporting that contention."[183] Moreover, "genuine humiliation, anxiety, confusion, upset, worry and the like are typically insufficient."[184] Yet, this is precisely what McKinney asserts.[185] Importantly, McKinney does not plead any facts, such as visits to health care providers as a result of extreme stress or physical symptoms resulting therefrom, that would allow the Court to infer she suffered actual severe emotional distress.[186]

The motion to dismiss McKinney's State law emotional distress claims is therefore GRANTED.

## I. Punitive Damages

Defendants next argue that "with her § 1983 claims falling for failure to state a claim upon which relief can be granted, [McKinney's] punitive damages claim also falls."[187] However, because the Court has determined McKinney's § 1983 claim for First

---

[183] *Duhon v. Healthcare Professionals' Foundation of Louisiana*, No. 20-2022, 2022 WL 298844, at *3 (E.D. La. Feb. 1, 2022).

[184] *Gressett v. Southwest Airlines Company*, 216 F.Supp.3d 734, 749 (E.D. La. 2016) (citing *Nicholas v. Allstate Ins. Co.*, 765 So.2d 1017, 1030 (La. 2000)).

[185] Rec. Doc. 9, ¶ 49 ("extreme anxiety, embarrassment, and humiliation").

[186] *Wilson v. Ochsner Clinic Foundation*, No. 19-12314, 2019 WL 5693109, at *7 (E.D. La. Nov. 4, 2019) ("[T]he second element…requires Plaintiff to prove symptoms of emotional distress like neuroses, psychoses, chronic depression, phobia, and shock").

[187] Rec. Doc. 11-1, p. 10.

Amendment retaliation survives against Sharp, Ballard, Fontenot, and Hendley, punitive damages remain available.  While McKinney cannot recover punitive damages from municipal officers in their official capacities, punitive damages are available against these Defendants in their individual capacities.[188]

Therefore, the motion to dismiss McKinney's punitive damages claims is DENIED.

## J. Attorney's Fees are Unavailable

Defendants move to dismiss McKinney's claim for attorney's fees because she is appearing "in proper person."[189]   Indeed, a pro se litigant is not entitled to attorney's fees under 42 U.S.C. § 1983, even if they are an attorney.[190]  McKinney concedes as much.[191] She notes, without citation to any authority, however, that "the same litigant may be entitled to attorney's fees under Louisiana's Public Records Law and/or Louisiana's Open Meetings Law."[192]  Because the Court has declined to exercise supplemental jurisdiction over these claims, the Court need not resolve the issue of attorney's fees.

The motion to dismiss McKinney's claim for attorney's fees is GRANTED.

## III.    CONCLUSION

For the reasons stated above, the Defendants' *Motion to Dismiss*[193] under Rule 12(b)(6) is GRANTED in part and the following claims are dismissed WITHOUT PREJUDICE: Count 1 (First Amendment Retaliation) with respect to all Defendants except Sharp, Ballard, Hendley, and Fontenot; Count 3 (Equal Protection); the state law claim for intentional/negligent infliction of emotional distress; and McKinney's request for

---

[188] *Broussard v. Lafayette Consolidated Government*, 45 F. Supp. 3d 553, 579 (W.D. La. 2014) ("[p]unitive damages are…recoverable against municipal employees who are sued in their individual capacities").
[189] Rec. Doc. 11-1, p. 10.
[190] *Kay v. Ehrler*, 499 U.S. 432, 435 (1991).
[191] Rec. Doc. 12, p. 22.
[192] *Id.*
[193] Rec. Doc. 11.

attorney's fees. The following claims are dismissed WITH PREJUDICE: Count 2 (Conspiracy to Violate First Amendment Rights) and Count 4 (*Monell* Liability). The *Motion to Dismiss* is DENIED as to Count 1 (First Amendment Retaliation) with respect to Defendants Sharp, Ballard, Hendley, and Fontenot, and is further DENIED as to McKinney's claim for punitive damages against these named Defendants.  The following claims are REMANDED: Count 2 (to the extent it involves Conspiracy to Violate Freedom of Expression in Violation of the Louisiana Constitution) and Count 5 (violations of Louisiana's Public Records and Open Meetings laws).  Plaintiff is GRANTED leave of court to amend her Complaint to cure the deficiencies set forth herein within 21 days of this Ruling.[194]

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 30th day of March, 2026.

_____
**CHIEF JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[194] If Plaintiff wishes to amend more broadly, she must file a motion under the applicable Federal Rules of Civil Procedure.

32